915 S.W.2d 114 (1996)
In the Matter of A.L.S., a Juvenile.
No. 04-95-00195-CV.
Court of Appeals of Texas, San Antonio.
January 10, 1996.
Robert A. Monks, Galveston, for Appellant.
Denise V. Wilkerson, Assistant District Attorney, Galveston, for Appellee.
Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

OPINION
RICKHOFF, Justice.
Appellant, a juvenile, was found to have engaged in delinquent conduct by committing the offense of murder and was assessed a determinate sentence of thirty-five years by a jury. In four points of error, appellant contends the trial court committed reversible error by (1) failing to give him the admonishments mandated by Tex.Fam.Code § 54.03(b); (2) including erroneous instructions regarding future release and parole possibilities in the charge; and (3) overruling his motion to suppress the pistol used in the commission of the murder. Based on our previous holdings, we conclude that the trial court's failure to admonish appellant in accordance with Tex.Fam.Code § 54.03(b) was fundamental error requiring reversal.
Section 54.03(b) of the Texas Family Code requires certain admonishments be given as a condition precedent to finding that a juvenile has engaged in delinquent conduct. In re I.G., 727 S.W.2d 96, 99 (Tex.App.-San Antonio 1987, no writ). The admonishments the juvenile court judge is required to explain at the beginning of the adjudication *115 hearing to the child and his parent, guardian, or guardian ad litem include:
(1) the allegations made against the child;
(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding;
(3) the child's privilege against self-incrimination;
(4) the child's right to trial and to confrontation of witnesses;
(5) the child's right to representation by an attorney if he is not already represented; and
(6) the child's right to trial by jury.
TEX.FAM.CODE ANN. § 54.03(b) (Vernon Supp. 1993).
In the instant appeal, neither the court nor the prosecutor read the charges to appellant before the following admonishment by the court, and neither the statement of facts nor the docket sheet indicate appellant was admonished further, either verbally or in writing:
THE COURT: Now, Mr. Spurlock, do you understand what's happening here?
MR. SPURLOCK: Yes, ma'am.
THE COURT: Prosecutor has elected to proceed under the determinate sentencing statute. Do you understand that?
MR. SPURLOCK: Yes, ma'am.
THE COURT: And you have elected to go to the jury on punishment. Do you understand that a jury can give you up to 40 years in adult prison, T.D.C.?
MR. SPURLOCK: Yes, ma'am.
THE COURT: Do you understand that's what could happen? I know your attorney's explained that to you. And you're telling me that you do want a jury trial; is that correct? You want 12 people who are going to sit over here and hear all evidence. That's what you and your attorney have decided is best; is that correct?
MR. SPURLOCK: Yes, ma'am.
THE COURT: And we're going to pick those people at 1:30 this afternoon.
Let me just further explain to you if the jury should sentence you to a term in prison, you would go to T.Y.C. until you're almost 18 years old. Then you'll come back before me and I will decide at that time whether, 1: I'm going to discharge you; whether, 2: I'm going to send you back to T.Y.C. until you're 21; or whether I'm going to give you the sentence that the jury has given, if they should give you a sentence. Do you understand all those things? Do you have any questions of me?
MR. SPURLOCK: No, ma'am.
THE COURT: All right. Let me just further tell you you have a right to remain silent and not make any statement concerning any crime of which you stand charged. However, if you give up your right to remain silent and admit the offense, you will be declared delinquent. You have a right to two days' notice of matters contained in the State's petition. Have you had that notice, Mr. Monks?
MR. MONKS: Oh, yes, Your Honor. Long ago.
THE COURT: Any trial amendments, you're given 10 days to prepare; is that correct?
MR. MONKS: Yes, Your Honor.
THE COURT: You have a right to trial by jury, and we've gone over that. You're going to get your right to trial by jury in both the guilt/innocence and the punishment phase. Or I should have said adjudication/disposition.
Let me further tell you that if the jury does adjudicate you, if the jury finds you delinquent here, this offense will follow you in any penalty phase of any subsequent trial. Do you understand that? Mr. Monks, you'll explain that to him.
MR. MONKS: I'll explain that to him.
THE COURT: Okay.
MR. MONKS: That means if the jury finds you guilty, actually tried as though you're convicted of a crime as an adult.
THE COURT: I suppose we'll read the petition in front of the jury.
MR. BENNETT: Yes, Your Honor.
THE COURT: Is there anything further before we pick a jury at 1:30?

*116 MR. MONKS: We ask they only read the sections of the petition they're going on.
THE COURT: Absolutely.
MR. BENNETT: Absolutely.
MR. MONKS: We'll see you at 1:30.
Thank you.
The State admits that the trial court "omitted telling appellant what the allegations were against him," but urges us to apply a harm analysis because: (1) the dialogue between appellant and the trial court occurred during a pre-trial hearing where the allegations were being discussed; (2) previously appellant had time to confer with his attorney regarding the petition; (3) appellant's attorney had served interrogatories on the State which had been answered; (4) appellant's attorney received a copy of the offense report; (5) appellant had no questions of the court; and (6) there was no objection to the trial court regarding preadjudication admonishments. The crux of the State's argument is that holding the failure to provide the mandatory explanation to be a fundamental error encourages practitioners to "lie behind the log" and wait to see whether the client is convicted before raising the defect for the first time on appeal. The State then asks "[w]hat lessons are taught the young criminals by this result. [sic]"
The principal lesson will be that charged delinquents will be given an opportunity by the trial judge to comprehend their situation and their rights. While many participants to Title 3 proceedings may feel that the vast majority of juveniles remain invincibly ignorant of the charges and their rights even after a proper warning, for those who have the capability to comprehend determinate sentencing consequences, our prior holdings ensure that this court admonishment remains the fundamental right the legislature intended.
In civil cases, fundamental error continues to be recognized where "the public interest is directly and adversely affected as that interest is declared in the statutes or in the Constitution of Texas." See Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex.1982); In re I.G., 727 S.W.2d at 99. The Supreme Court has stated that in proceedings where a child risks loss of liberty, the public interest in ensuring that the child is given proper notice of the allegations against him has been declared in the mandatory notice requirements of section 54.03(d) of the Texas Family Code. L.G.R. v. State, 724 S.W.2d 775, 776 (Tex.1987). This same public interest is further declared in the mandatory admonishment provisions of section 54.03(b), which are intended to apprise a juvenile of his most basic, fundamental rights. See In re I.G., 727 S.W.2d at 99; see also Matter of T.F., 877 S.W.2d 81, 82 (Tex.App.-Houston [1st Dist.] 1994, no writ); In re O.L., 834 S.W.2d 415, 420 (Tex.App.-Corpus Christi 1992, no writ). In order to foster this public interest, the legislature made the explanation under section 54.03(b) mandatory as a means to assist children, who are too inexperienced and unskilled to fully understand the nature of juvenile proceedings and the possible consequences thereof. In re I.G., 727 S.W.2d at 99. Therefore, we continue to hold that failure to admonish a child as required by section 54.03(b) constitutes fundamental error, and no objection at trial is necessary to preserve the complaint for appeal. P.L.W. v. State, 851 S.W.2d 383, 385 (Tex.App.-San Antonio 1993, no writ) (wherein there was a similar failure to admonish); Matter of L.T., 848 S.W.2d 769, 771 (Tex.App.-Corpus Christi 1993, no writ); In re G.K.G., 730 S.W.2d 182, 183-84 (Tex.App.-San Antonio 1987, no writ); In re I.G., 727 S.W.2d at 99.
A close reading of the record reveals that (1) appellant's father was incarcerated for a cocaine offense; (2) the mother admitted a drinking problem and leaving her children unsupervised when investigated in three prior Title 2 proceedings; (3) the family's sole income was AFDC and food stamps; (4) the home was not supplied with utilities; (5) the children were not immunized; and (6) appellant's intake screening profile indicated "he has grown up in a troubled environment," "[s]everal of his family members have been involved with drug abuse," and "he was never given a normal childhood." Nevertheless, this child was a straight A student through fifth grade and, in sixth grade, was able to score in the 97 percentile in problem solving and interpretation as well as computation on *117 the Norm-Referenced Assessment Program for Texas in April of 1992. He was, therefore, precisely the child the legislature concluded could comprehend and benefit from proper admonishments.
The State also urges us to consider that appellant faced up to nine detention hearings, and in each instance, he had an opportunity to learn he was held on an allegation of murder. We infer from the record that neither parent was present at these hearings, and in oral argument, appellant's trial defense attorney admitted he did not attend those hearings, nor did he know if he was required to or whether the county compensated him for attending. Further, during part of his detention, appellant was held on other charges. We discount the value of these hearings in that jurisdiction.
Appellant testified that he was misadvised by the investigating and arresting officers as to the consequences of a murder charge. Appellant testified that the officers read out of a little black book, and "[f]irst they read underon the murder, then capital murder, murder, and it had manslaughter." Appellant further testified that "they say I get forty years if I get capital murder. They told me I was going to get 40 years. When they read under capital murder, they said I could get the death penalty." The confusion these prior statements created in appellant's mind emphasizes the need for the trial court to fulfill its statutory duty to explain the allegations and nature and possible consequences of the proceedings to appellant. Additionally, since appellant was shot four months earlier by the victim, he employed an extended self-defense theory based on a perceived need to anticipate the victim's behavior. An explanation that he knowingly and intentionally acted may have generated a better understanding of the charges against him.
In the context of this case, the trial court's delegation of any part of this mandated duty to the child's attorney is not authorized. Matter of L.T., 848 S.W.2d at 771. Nor may the court delegate the duty to the prosecutor. P.L.W. v. State, 851 S.W.2d at 385. It was the court's responsibility to explain to this child the allegations made against him and the law relating to the admissibility of the record of a juvenile court adjudication in a subsequent criminal proceeding. The court's failure to mention the pending charges during the admonishment was reversible error. We recognize there may be imprecise language used during an admonishment that contains each of the required explanations. In those instances, we may require an appellant to show that he was harmed. However, in this case, the trial court wholly omitted one of the required explanations. We sustain appellant's first and second points of error.
By points three and four, appellant contends the trial court committed a charge error and erred in overruling his motion to suppress. Because we have found that the trial court committed reversible error in failing to provide the admonishments required under the Family Code, the judgment must be reversed and the case remanded for a new hearing. Points three and four are not therefore dispositive and are not addressed.
The judgment of the trial court is reversed and the cause remanded for new trial.
DUNCAN, Justice, concurring.
In my view, there is a serious question as to whether the law to be applied in this or any other transfer case is the law of the transferor or transferee court. However, this issue need not be reached in this case because both the transferor and transferee courts hold that the failure to admonish in a juvenile case pursuant to section 54.03(b) of the Texas Family Code is fundamental error. Compare Matter of T.F., 877 S.W.2d 81, 82 (Tex.App.-Houston [1st Dist.] 1994, no writ) with In re I.G., 727 S.W.2d 96, 99 (Tex. App.-San Antonio 1987, no writ). On this basis, I concur in the judgment.