**In the Matter of A.D.D.**

No. 04–96–01014–CV.

Court of Appeals of Texas, San Antonio.

May 20, 1998.

Marsha Lynn Merrill, San Antonio, for appellant.

Angela Moore, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

The trial court found A.D.D. engaged in delinquent conduct by committing the offense of possession of less than one gram of cocaine and placed him on probation. A.D.D. appeals, contending the State failed to invoke the trial court's juvenile jurisdiction because it failed to prove his age at the adjudication hearing, and the trial court committed fundamental error in failing to admonish him in accordance with section 54.03(b) of the Texas Family Code. A.D.D. also argues the trial court erred in denying his motion to suppress evidence of the cocaine because it was the product of an unconstitutional search.

We hold the trial court properly exercised its juvenile jurisdiction in this case because the State pleaded the requisite jurisdictional facts, A.D.D. was in fact a juvenile at the time of the adjudication hearing, and the defect in the State's proof of A.D.D.'s age was curable and cured before the trial court rendered its judgment. However, because the trial court erred in denying A.D.D.'s motion to suppress, we reverse its judgment and remand the case for further proceedings. We therefore do not need to reach, and do not decide, the admonishments issue.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 6, 1995, Officers Booth and Kurtz received a radio call dispatching them to an address at which an unidentified informant stated a group of black teenagers was smoking crack cocaine. When the officers arrived, they saw three young men, one of whom was A.D.D., sitting in front of a garage. As the officers walked up the driveway, Booth saw one of the young men look at him in surprise and then lean back quickly while putting something inside the garage wall. Officer Booth told the three

young men to put their hands in plain view and then frisked them for weapons. Finding none, Booth looked inside the garage wall and found what appeared to be crack cocaine. He then arrested and handcuffed the person he had seen place the cocaine in the garage. Officer Booth then patted down A.D.D. a second time. During this second search, Booth found a small plastic bag containing what was later identified as crack cocaine in A.D.D.'s back pocket. A.D.D. was then arrested and taken to the juvenile detention center.

The State filed a petition alleging A.D.D. engaged in delinquent conduct by committing the offense of possession of less than one gram of cocaine. In response, A.D.D. filed a motion to suppress, arguing the cocaine was the fruit of an unconstitutional search. At the subsequent suppression hearing, the trial court explained the nature of the proceeding to A.D.D. and admonished him regarding his right to remain silent and his right to counsel. Based on the evidence presented, the trial court denied A.D.D.'s motion to suppress.

At the beginning of the adjudication hearing, the trial judge fully explained to A.D.D. the charge against him and the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding. The judge also admonished A.D.D. about his right to a trial by jury and satisfied himself that A.D.D. knowingly and voluntarily was waiving that right; but he did not admonish A.D.D. he had a right to remain silent, a right to a trial and to confront the witnesses who would testify against him, or the right to an attorney. However, the record affirmatively establishes A.D.D. exercised each of these rights—he did not testify, he participated at trial and cross-examined witnesses, and he was represented by an attorney at all times. The record also establishes A.D.D. did not object at the adjudication hearing either to the trial court's failure to fully admonish him or to the State's failure to prove his age.

At the conclusion of the adjudication hearing, the trial court found A.D.D. engaged in delinquent conduct as alleged in the State's petition. At the disposition hearing that immediately followed, the trial court heard evidence establishing A.D.D.'s birth date and, after listening to the recommendations of A.D.D.'s mother and the probation officer, placed A.D.D. on probation for eighteen months.

## JURISDICTION

A.D.D. argues the State failed to invoke the trial court's juvenile jurisdiction because it did not prove his age at the adjudication hearing. We disagree. The record conclusively establishes the trial court possessed subject matter jurisdiction over juvenile cases generally and personal jurisdiction over this juvenile in particular at the time it rendered judgment. No more is required.

### Standard of Review

■ A.D.D.'s jurisdictional argument requires that we interpret Title 3 of the Texas Family Code, a question of law we review de novo. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997).

### Statutory Construction

Effective January 1, 1996, section 51.042 of the Texas Family Code provides that a juvenile who fails to object at an adjudication hearing to a court's assertion of juvenile jurisdiction over him because of his age waives the complaint. TEX. FAM.CODE ANN. § 51.042(b) (Vernon 1996). However, this provision does not apply in this case because the conduct for which A.D.D. was adjudicated delinquent occurred before January 1, 1996. Act of May 31, 1995, 74th Leg., R.S., ch. 262 § 106, 1995 Tex. Gen. Laws 2517, 2590–91. Accordingly, to determine whether the State was required to prove a juvenile's age at the adjudication hearing to invoke the court's juvenile jurisdiction, we must resort to the guidelines for statutory construction set forth in the Code Construction Act. *See* TEX. GOV'T CODE ANN. §§ 311.001–311.032 (Vernon 1988 & Supp.1998). Of particular importance in this case are the common law principles of civil and juvenile jurisdiction.

*Principles of Civil and Juvenile Court Jurisdiction*

By statute, the juvenile court designated by the county's juvenile board is vested with "exclusive original jurisdiction" over proceedings involving allegedly delinquent conduct by a "child." TEX. FAM.CODE ANN. § 51.04(a)–(b) (Vernon 1996). A "child" is a person who is "ten years of age or older and under 17 years of age; or ... seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct ... as a result of acts committed before becoming 17 years of age." *Id.* § 51.02(2).

■ Like any other court, therefore, a juvenile court "must possess both subject matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment." *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). "[S]ubject matter jurisdiction refers to the court's power to hear a particular type of suit," *id.,* a power that "exists by operation of law only, and cannot be conferred upon any court by consent or waiver." *Federal Underwriters Exch. v. Pugh,* 141 Tex. 539, 541, 174 S.W.2d 598, 600 (1943). Personal jurisdiction, on the other hand, "concerns the court's power to bind a particular person or party," *CSR,* 925 S.W.2d at 594, and, as a general rule, "can be conferred by consent or waiver." *Federal Underwriters Exch.,* 141 Tex. at 541, 174 S.W.2d at 600.

■ A court's subject matter jurisdiction is initially invoked simply by pleading the requisite "jurisdictional facts." *E.g., Mingus v. Wadley,* 115 Tex. 551, 562, 285 S.W. 1084, 1089 (1926). However, one seeking to enforce a judgment rendered by a court exercising "special jurisdiction" conferred by statute must, as a general rule, demonstrate that the court in fact possessed both subject matter and personal jurisdiction to render the judgment it did. *Id.* (quoting with approval 15 C.J.S. § 150(2), at 831–832, and *Cunningham v. Robison,* 104 Tex. 227, 136 S.W. 441 (1911)).

In *Cunningham,* the court held that because a district court is vested by statute with "special jurisdiction" to remove a minor's disabilities only if the minor is (1) over nineteen and (2) resides within the county of suit, proof of both facts is necessary to establish the validity of a judgment removing the minor's disabilities. *Cunningham,* 104 Tex. at 229, 136 S.W. at 442. However, requiring proof of these facts does not require the facts to be proved in the original trial court record or, indeed, at any particular time. The *Cunningham* court thus expressly noted that the record did not contain the requisite proof, and Cunningham had neither alleged the facts in his petition nor requested permission to prove them "outside the record." *Id.* Similarly, in *Steed v. State,* although the court reversed a delinquency judgment because neither the judgment nor the record established the juveniles' birth dates or "any other data from which it could be determined when the term of their commitment would end," it did not render judgment in the minors' favor. 143 Tex. 82, 86, 183 S.W.2d 458, 460 (1944). Rather, the court simply remanded the case to the trial court for further proceedings. *Id.* These general principles likewise mandate that we reject A.D.D.'s contention that the State failed to invoke the trial court's juvenile jurisdiction in this case.

*Subject Matter Jurisdiction*

[6] Section 54.03 details the procedures to be followed at an adjudication hearing. TEX. FAM.CODE ANN. § 54.03 (Vernon 1996). This section does not, however, expressly require the State to prove a juvenile's age to invoke the court's juvenile jurisdiction. Rather, section 53.04(d)(2) requires the State to plead this and other jurisdictional facts. *See id.* § 53.04(d)(2) (petition alleging delinquent conduct "must state ... the age ..., if known, of the child who is the subject of the petition"). The State did so in this case by filing a petition complying with section 53.04 in the 289th Judicial District Court of Bexar County, Texas—a court that is, by statute, to give preference to juvenile cases. TEX. GOV'T CODE ANN. § 24.466(b) (Vernon 1988 & Supp. 1998). Thereafter, A.D.D.'s case was transferred to, and a judgment was rendered by, the 73rd Judicial District Court of Bexar County, Texas, sitting as a juvenile court. *See id.* § 24.175(c) (Vernon Supp.1998) (effective September 1, 1993, 73rd Judicial District

Court to give preference to "civil cases and to cases and proceedings under Title 3, Family Code"); *see also* TEX. GOV'T CODE ANN. § 23.001 (Vernon Supp.1998) ("Each district court, county court, and statutory county court exercising any of the constitutional jurisdiction of either a county court or a district court has jurisdiction over juvenile matters and may be designated a juvenile court."); TEX. GOV'T CODE ANN. § 24.139(c) (Vernon 1988) (all Bexar County district courts have concurrent jurisdiction).

Under these circumstances, we hold the record establishes the court's subject matter jurisdiction over juvenile proceedings.

## Personal Jurisdiction

■ We likewise conclude the record establishes the trial court's personal jurisdiction to issue a delinquency judgment against A.D.D. because it contains proof that A.D.D. was a juvenile within the meaning of section 51.02(2) at the time of the conduct giving rise to the petition, at the time of the adjudication hearing, and at the time of the disposition hearing. Indeed, this is the critical fact that distinguishes this case from those cited by A.D.D. in which the appellate courts reversed and remanded because the records contained no evidence of the appellants' ages. *See In re A.S.*, 875 S.W.2d 402, 403 (Tex.App.— Corpus Christi 1994, no writ); *Miguel v. State*, 500 S.W.2d 680 (Tex.Civ.App.—Beaumont 1973, no writ); *see also In re J.T.*, 526 S.W.2d 646, 648 (Tex.Civ.App.—El Paso 1975, no writ). We therefore overrule A.D.D.'s third point of error.

### ADMONISHMENTS

A.D.D. also argues the judgment must be reversed because the trial court committed fundamental, automatically-reversible error by failing to admonish him regarding his right to remain silent, his right to a trial and to confront witnesses against him, and his right to counsel, as required by section 54.03(b) of the Family Code. The State counters there was no violation of the admonishment statute because A.D.D. was admonished by one trial judge regarding his rights to remain silent and to counsel before the suppression hearing, and he was admonished

by another judge regarding the allegations made against him and the nature and possible consequences of the proceedings before the adjudication hearing.

### Standard of Review

A.D.D.'s argument requires that we interpret Title 3 of the Texas Family Code, a question of law that we review de novo. *See Mitchell Energy*, 943 S.W.2d at 437.

### Discussion

Section 54.03 provides:

(b) At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem:

(1) the allegations made against the child;

(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding;

(3) the child's privilege against self-incrimination;

(4) the child's right to trial and to confrontation of witnesses;

(5) the child's right to representation by an attorney if he is not already represented; and

(6) the child's right to trial by jury.

■ TEX. FAM.CODE ANN. § 54.03(b) (Vernon 1996). The purpose of these admonishments is to "assist children, who are too inexperienced and unskilled to fully understand the nature of juvenile proceedings and the possible consequences thereof." *In re A.L.S.*, 915 S.W.2d 114, 116 (Tex.App.—San Antonio 1996, no writ) (citations omitted). Accordingly, section 54.03(b) expressly requires the trial court to admonish the juvenile "[a]t the beginning of the adjudication hearing."

■ We reject A.D.D.'s contention that the trial court was required to admonish him regarding his right to counsel. Section 54.03(b) plainly states this admonishment is not required if the juvenile is in fact represented, as A.D.D. was at the adjudication hearing and all other times. But we also

reject ·the State's argument that section 54.03(b) is satisfied by partial admonishments given by two different judges over a four-month period. We cannot and will not assume a child will understand he has a right not to testify and to have a lawyer present at trial when a trial judge has told him he had those rights four months earlier at a pretrial hearing, especially when the admonishments are immediately followed by an explanation that the pretrial hearing is not a trial, as was the case here. *See W.J.M.A. v. State,* 602 S.W.2d 397, 400 (Tex.Civ.App.—Beaumont 1980, no writ).

We are left, then, with the trial court's failure to admonish A.D.D. of his rights to a trial and cross-examination and to remain silent—all of which the record affirmatively establishes A.D.D. in fact exercised, thus completely negating harm. We recognize, of course, this court has held that a failure to give each of the admonishments required by section 54.03(b) constitutes fundamental, automatically-reversible error. *In re A.L.S.,* 915 S.W.2d at 116; *In re I.G.,* 727 S.W.2d 96, 98–99 (Tex.App.—San Antonio 1987, no writ). However, we did so because we believed the Texas Legislature's decision to phrase section 54.03(b) in mandatory language required this result. *Id.* But in 1997, after this case was tried, the legislature amended section 54.03 to require an objection to preserve the error in failing to properly admonish. TEX. FAM.CODE ANN. § 54.03(i) (Vernon Supp. 1998). In light of these circumstances, we are hesitant to follow our prior decisions without reevaluating them in light of the legislative history culminating in the 1997 amendment. Therefore, because reversal is required by the trial court's ruling on A.D.D.'s motion to suppress, as discussed below, we decline to reach this aspect of A.D.D.'s argument.

### SUPPRESSION OF EVIDENCE

Finally, A.D.D. contends the trial court erred in denying his motion to suppress evidence of the cocaine found by Officer Booth because his detention, both searches, and his warrantless arrest of A.D.D. were invalid under the Fourth and Fourteenth Amendments to the United States Constitution and

article I, section 9 of the Texas Constitution. In response, the State justifies Officer Booth's initial detention and search of A.D.D. as a valid investigative detention and weapons search under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and argues the cocaine found by Officer Booth while "performing the *Terry* patdown" supplied probable cause for the warrantless arrest. However, as indicated by our recitation of the factual background above, this argument mischaracterizes the record in two respects: first by implying Officer Booth conducted a single search of A.D.D., when in fact he testified to two, and second by implying the second search was a protective weapons search when, in fact, the testimony of both officers conclusively established the contrary. And it is the second search that violated A.D.D.'s constitutional rights.

### Scope and Standard of Review

As a general rule, the scope of appellate review is limited to the record before the fact finder. However, when the parties consensually relitigate the suppression issue at trial, as the parties did in this case, the scope of review extends to evidence introduced at trial and relevant to the suppression issue. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 117 S.Ct. 614, 136 L.Ed.2d 539, (1996); *Barley v. State,* 906 S.W.2d 27, 31 n. 2 (Tex.Crim. App.1995), *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996).

The standard of review applicable in this context depends upon the focus of the appellant's challenge. With respect to the trial court's findings of historical fact, we "view the evidence in the light most favorable to [its] ruling," affording almost total deference to findings supported by the record. *Loserth v. State,* 963 S.W.2d 770, 770–74 (Tex.Crim.App.1998); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, when the resolution of the suppression issue does not turn upon an evaluation of credibility or demeanor, we review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo. *Id.; see Ornelas v. United States,* 517 U.S. 690,

116 S.Ct. 1657, 1662–63, 134 L.Ed.2d 911 (1996) (de novo review of trial court's determination of reasonable suspicion); *see also Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts.").

### Discussion

Like an adult, a juvenile is protected from an unreasonable search by the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. TEX. FAM.CODE ANN. § 52.01(b) (Vernon 1996); *Lanes v. State,* 767 S.W.2d 789, 800 (Tex.Crim.App.1989); *see also* TEX. FAM.CODE ANN. § 51.17(c) (Vernon 1996) (chapter 38 of the Texas Code of Criminal Procedure applies to juvenile proceedings); TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1998) ("No evidence obtained ... in violation of ... the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case...."). Accordingly, a temporary detention for investigative purposes is permissible only if the circumstances objectively support a reasonable suspicion that the person detained is or has been engaged in criminal activity. *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997) (citing *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991)). Similarly, the State must demonstrate constitutionally-adequate, reasonable grounds for searching a juvenile, and an officer conducting a weapons search must justify his decision to search with "specific and articulable facts which, taken together with rational inferences from those facts," would cause a reasonably prudent person to believe his safety or that of others is in danger. *Terry v. Ohio,* 392 U.S. 1, 21–22, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When a protective search is warranted, the search must be carefully limited to that necessary to discover weapons that could reasonably harm the police officer or others. *Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868. " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of vio-

lence....' " *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (quoting *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.,* 508 U.S. at 373, 113 S.Ct. 2130 (citing *Sibron v. New York,* 392 U.S. 40, 65–66, 88 S.Ct. 1889 (1968)). Therefore, "[i]f in the course of a pat-down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert v. State,* 664 S.W.2d 712, 721 (Tex.Crim.App. 1984) (citations omitted); *see also Davis v. State,* 829 S.W.2d 218, 220–21 (Tex.Crim.App. 1992) (because it would be unreasonable to fear weapon in a matchbox, facts did not justify further search).

In this case, we need not decide whether either the initial detention or Booth's first patdown of A.D.D. was constitutionally permissible because it was the second search that yielded the cocaine, and neither Booth nor his partner testified to any fact that could have justified a protective weapons search of A.D.D. after the first patdown revealed he was not carrying a weapon. To the contrary, both officers testified that A.D.D. complied with all their instructions, he kept his hands in plain view, he made no furtive gestures or movements, and they had full control of the situation. In fact, Officer Booth testified he had *no* articulable fear of A.D.D.; and he admitted A.D.D. was not within reach of the cocaine he discovered in the garage, it was not A.D.D.'s house, and he did not have probable cause to arrest A.D.D. before the second search. Indeed, Booth testified that multiple weapons searches are just "not uncommon." Finally, Officer Booth testified that a true weapons search would not have revealed the bag of cocaine because it is so small.

Under these circumstances, we have no difficulty concluding the record is completely devoid of the constitutionally-required "specific and articulable facts which, taken together with rational inferences from those

facts," would cause a reasonably prudent person to believe his safety or that of others was in danger. *Terry*, 392 U.S. at 21, 27, 88 S.Ct. 1868. We therefore hold Officer Booth's second search of A.D.D. was invalid under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Texas Constitution. As a result, the trial court erred in denying A.D.D.'s motion to suppress.

## CONCLUSION

Because the record contains no evidence justifying Booth's second search of A.D.D. as a protective weapons search, we sustain A.D.D.'s first and fourth points of error, reverse the trial court's judgment, and remand the case to that court for further proceedings consistent with this opinion.