**Affirmed and Memorandum Opinion filed March 31, 2020.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-18-00989-CR**

---

**JESUS FRANCISCO CAMPOS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1608058**

---

## M E M O R A N D U M   O P I N I O N

Appellant Jesus Francisco Campos, Jr., appeals his conviction for capital murder. In the first of his two issues, appellant challenges the criminal district court's jurisdiction over him. In his second issue, appellant contends the trial court erred in denying his motion to suppress evidence obtained from two cell phones. Finding no merit to either contention, we affirm the judgment.

## Background

Appellant and Katia, both fifteen years old, were in a dating relationship.[1] On May 27, 2016, Officer Derrick Jaradi with the South Houston Police Department ("SHPD") received a call from Katia's family, who told him that Katia was missing and that she might be with her boyfriend, appellant. The family provided Officer Jaradi with appellant's name and address. Officer Jaradi went to appellant's house and met with appellant and appellant's parents. Appellant's parents gave Officer Jaradi permission to search the residence for Katia, but she was not there.

Officer Jaradi asked appellant if he knew where Katia was. Appellant replied that he did not, and he told Officer Jaradi that he and Katia had argued earlier and "[gone] their separate ways."

Based on a text message Katia's family received from her tablet earlier that day, Officer Jaradi drove to an abandoned apartment complex near the high school Katia attended, where he met members of Katia's family. Officer Jaradi searched the area with a canine but was unable to locate Katia.

Officer Jaradi returned to appellant's house, where appellant and appellant's parents were still present. Officer Jaradi asked appellant, "Hey, do you mind showing me your phone, show me the last couple of texts that y'all had?" Appellant went into the house and returned with two cell phones, an LG-brand phone and a ZTE-brand phone. According to Officer Jaradi, "[b]oth the mother and the father and [appellant] agree[d] to let [Officer Jaradi] look at the cell phones." Appellant also told Officer Jaradi that appellant let Katia use the LG phone because Katia's family took away her cell phone.

---

[1] We refer to the complainant, a minor, by a pseudonym. *See* Tex. R. App. P. 9.10(a)(3).

Officer Jaradi asked to see the last text from Katia on the ZTE phone. Appellant said, "Look, I'll show you," and started scrolling "unusually fast" so that Officer Jaradi could not read anything on the phone's screen. According to Officer Jaradi:

> And then he taps a text, it looked like a text. I'm assuming it was a text. And I remember seeing a trash can icon popping up. He attempts to tap -- or he did, he tapped the trash can icon, but the screen is cracked so it did not immediately take the response, I'm guessing. In my mind, he's attempting to delete something, possibly evidence, trying to delete evidence, so I snatched the cell phone out of his hands and he puts his hands up and he says, "Okay. You know, okay."

Officer Jaradi asked appellant why he attempted to delete a text, and appellant responded, "Just read them and you'll find out," which the officer understood as appellant consenting again to Officer Jaradi looking at the phone. When Officer Jaradi examined the phone, the text message that appellant tried to delete was still visible on the screen. The other texter's "contact name" showed appellant's mother's name, but Officer Jaradi understood after reading through the texts that the message actually came from Katia, who had been using the LG phone to text with appellant on the ZTE phone. Officer Jaradi testified that appellant sent threatening text messages to Katia, including one threatening to tell her mom that he had nude videos of Katia and another threatening to kill Katia if she did not leave school to meet appellant. The message threatening to kill Katia was dated May 27—the date Katia's parents reported her missing.

Officer Jaradi also searched the LG phone after appellant provided the passcode to unlock the phone; however, Officer Jaradi found no text messages between appellant and Katia at that time. Officer Jaradi kept the ZTE phone as evidence and returned the LG phone to appellant's parents.

3

Sergeant Hector Garcia with the Houston Police Department assisted SHPD with the missing person case. Sergeant Garcia spoke with appellant's parents about the two cell phones that were potentially relevant to Katia's disappearance. Sergeant Garcia understood that both cell phones "belonged" to appellant's parents, in that the phones were registered under the parents' names and appellant's father paid the bills for both. However, appellant and his younger brother regularly used the two phones.

Sergeant Garcia concluded the interview with appellant's parents and went to a SHPD patrol station. Shortly thereafter, appellant's father brought the LG phone to the station at Sergeant Garcia's request.

Detective Keith Turner was SHPD's lead investigator on the missing person case. Detective Turner obtained signed consent forms from appellant's mother and father to search the LG and the ZTE phones. Detective Turner searched the phones and found a video clip on the LG phone. The video was "all dark, like the video had been filmed in total darkness, but there was audio on there." Detective Turner identified appellant's voice and a female voice on the audio, and the detective heard appellant say his girlfriend's name. The audio clip introduced into evidence is approximately twelve minutes long, and the female voice can be heard crying and making choking sounds. Detective Turner also reviewed the threatening text messages on the ZTE phone.

On May 30, Detective Turner learned that Katia's body had been found. Police located Katia's body in a dilapidated and unoccupied unit of the abandoned apartment complex that Officer Jaradi searched the day she was reported missing. There for several days, Katia's body had been concealed inside a cabinet underneath the kitchen sink.

4

The State charged appellant with Katia's murder in juvenile court. The juvenile court, in its discretion, transferred appellant to the jurisdiction of the criminal district court. The State alleged that while in the course of committing and attempting to commit the aggravated sexual assault or kidnapping of Katia, appellant intentionally caused the death of Katia by strangulation or by striking Katia's head with or against an unknown object. A Harris County grand jury indicted appellant for the offense of capital murder.

Appellant pleaded not guilty and, prior to trial, moved to suppress all evidence recovered from the LG and ZTE cell phones. The trial court denied appellant's motion and signed findings of fact and conclusions of law in support of its ruling.

The jury found appellant guilty of capital murder. The trial court sentenced appellant to life imprisonment.

**Issues**

Appellant presents two issues for our review. First, he argues that the trial court lacked subject matter jurisdiction over the case because the State re-indicted him after his eighteenth birthday without securing a new waiver of jurisdiction from the juvenile court. Second, he argues that the trial court committed reversible error when it failed to suppress evidence from the two cell phones. We address each issue in turn.

**Jurisdiction**

A juvenile court has exclusive original jurisdiction over all proceedings involving delinquent conduct engaged in by a person who was a child at the time the person engaged in the conduct. *See* Tex. Fam. Code § 51.04(a). A "child" means a person who is: (a) ten years of age or older and under seventeen years of

age; or (b) seventeen years of age or older and under eighteen years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming seventeen years of age. *See id.* § 51.02(2). Delinquent conduct includes conduct, other than a traffic offense, that violates a Texas penal law punishable by imprisonment or confinement in jail. *See id.* § 51.03(a)(1). Thus, any person accused of committing a felony offense between his tenth and seventeenth birthdays is subject to the exclusive original jurisdiction of a juvenile court. *See Arango v. State*, 518 S.W.3d 916, 920 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "This means that the juvenile court has the power to hear and decide matters pertaining to the juvenile offender's case before any other court, including the criminal district court, can review them." *Id.*

A juvenile court, however, may waive its jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if, as relevant here: (1) the child is alleged to have committed a felony; (2) the child was fourteen years old or older at the time he allegedly committed a capital felony offense and no adjudication hearing has been conducted concerning that offense; and (3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings. *See* Tex. Fam. Code § 54.02(a).

The juvenile court held a hearing to determine whether to waive jurisdiction on May 10, 2017, when appellant was sixteen years old. After reviewing all the testimonial and documentary evidence admitted at the hearing, the court's file, and appellant's demeanor and conduct, the juvenile court decided to waive its

6

exclusive original jurisdiction and transfer appellant to the criminal district court. The court signed findings of fact to support its decision.

The juvenile court transferred appellant to the 178th criminal district court on May 26, 2017. The State indicted appellant for the offense of capital murder on August 4, 2017. Appellant's eighteenth birthday was October 3, 2018. The State re-indicted appellant on October 10, 2018.[2]

Appellant does not challenge the validity of the juvenile court's initial transfer. Instead, appellant argues that the district court lacked jurisdiction over him when the State re-indicted appellant on October 10, 2018. He argues that the State's failure to repeat the juvenile certification and transfer process from juvenile court to district court after appellant reached eighteen years of age deprived the district court of jurisdiction to proceed against him on the new indictment in the present case.

Texas Code of Criminal Procedure article 4.18 provides that any claim that a district court or criminal district court "does not have jurisdiction over a person because jurisdiction is exclusively in the juvenile court and that the juvenile court . . . did not waive jurisdiction under Section 8.07(b), Penal Code,[3] must be made by written motion in bar of prosecution filed with the court in which the criminal charges against the person are filed." Tex. Code Crim. Proc. art. 4.18(a); *see also* *id.* art. 4.18(b)(2) (motion must be filed before jury selection begins). Appellant

---

[2] The State changed the indictment to amend the manner and means by which appellant committed the charged offense. The State dismissed the original indictment after the jury convicted appellant in the present case.

[3] Section 8.07 incorporates the waiver and transfer requirements of Family Code section 54.02: "Unless the juvenile court waives jurisdiction under Section 54.02, Family Code, and certifies the individual for criminal prosecution or the juvenile court has previously waived jurisdiction under that section and certified the individual for criminal prosecution, a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age . . . ." Tex. Penal Code 8.07(b).

7

did not file a motion in bar of prosecution in the 178th criminal district court as required under article 4.18 and therefore cannot challenge that court's jurisdiction for the first time on appeal. *See, e.g.*, *Rushing v. State*, 85 S.W.3d 283, 286 (Tex. Crim. App. 2002) (article 4.18 "prescrib[es] a limitation on the right to appeal" and "prevents a claim from being raised in *any* context if the statute's preservation requirements are not met") (emphasis in original); *Adams v. State*, 161 S.W.3d 113, 114 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also* Tex. Code Crim. Proc. art. 4.18(d); *Mays v. State*, No. 01-03-01345-CR, 2005 WL 1189676, at *2-3 (Tex. App.—Houston [1st Dist.] May 19, 2005, no pet.) (mem. op., not designated for publication) ("A person who does not file a motion within the time requirements of the statute may not contest the jurisdiction of the court on the ground that exclusive jurisdiction rests with the juvenile court.").

We overrule appellant's first issue.

## Motion to Suppress

In his second issue, appellant argues that the trial court committed reversible error when it failed to suppress evidence obtained from the ZTE and LG cell phones, because appellant did not consent to the search of either phone and his parents did not have the authority to consent to the search.[4] The State urges us to reject these arguments because (1) appellant lacks standing to challenge the search of both phones, and (2) appellant's parents consented to the search of both phones and had actual or apparent authority to consent.

---

[4] Appellant identifies several items recovered from the cell phones that he contends contributed to the jury's verdict, such as: various text messages between appellant and Katia; "a video file [that] was recovered from the LG phone . . . where the Complainant can be heard pleading for her life while being sexually assaulted;" and "Thumbnails recovered from the ZTE phone [that] showed the Complainant with trauma to the head, bleeding from the nose and mouth, and an item across the Complainant's neck. . . . Complainant did not appear to be alive in the photos."

8

## A.    Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts, provided that those determinations are supported by the record. *Id.*; *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We review de novo the trial court's application of law to those facts. *Valtierra*, 310 S.W.3d at 447.

In a suppression hearing, the trial court is the sole trier of fact and judge of witnesses' credibility and the weight afforded their testimony. *Id.*; *Smith v. State*, 491 S.W.3d 864, 870 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). When, as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the factual findings. *Valtierra*, 310 S.W.3d at 447. We will affirm the trial court's ruling if it is supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447-48.

## B.    Applicable law

Modern day smart phones "place vast quantities of personal information literally in the hands of individuals." *Riley v. California*, 573 U.S. 373, 386 (2014). "Searching a person's cell phone is like searching his home desk, computer, bank vault, and medicine cabinet all at once." *State v. Granville*, 423 S.W.3d 399, 415 (Tex. Crim. App. 2014). Given these realities, people enjoy a reasonable, subjective, and legitimate expectation of privacy in the contents of their smart phones, an interest that is constitutionally protected. *See id.* at 405-06; *Royston v. State*, No. 14-13-00920-CR, 2015 WL 3799698, at *3 (Tex. App.— Houston [14th Dist.] June 18, 2015, pet. ref'd) (mem. op., not designated for

publication); *Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App.—Tyler 2009, pet. ref'd) ("[A] person has a privacy interest in information contained in a cellular telephone."). Likewise, ownership of such devices gives rise to recognized property interests, including the right to exclude others from the contents of one's smart phone. *See* Tex. Penal Code § 1.07(a)(35)(A) (defining "owner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor . . ."); *Thomas v. State*, 586 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

"Fourth Amendment rights . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). A defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his or her individual rights were violated, and thus he has "standing" to challenge the search. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978); *State v. Huse*, 491 S.W.3d 833, 839 (Tex. Crim. App. 2016); *Grant v. State*, 531 S.W.3d 898, 899 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Fourth Amendment standing may be predicated on either an intrusion-upon-property principle or a reasonable-expectation-of-privacy principle. *Florida v. Jardines*, 569 U.S. 1, 5 (2013); *Huse*, 491 S.W.3d at 840. A deprivation based on a privacy interest, as appellant argues here, requires that a defendant prove both a subjective expectation of privacy regarding the item searched and that the subjective expectation of privacy is one that society is prepared to recognize as reasonable. *See Chapa v. State*, 729 S.W.2d 723, 727 (Tex. Crim. App. 1987); *United States v. Finley*, 477 F.3d 250, 258 (5th Cir. 2007), *abrogated on other grounds as recognized in Govan v. United States*, 641 F. App'x 434 (5th Cir. 2016). The trial court found that appellant did not have a reasonable expectation of privacy in the cell phones and therefore lacked standing to complain

about SHPD's search and seizure. On appeal, the State argues that the trial court finding that appellant lacks standing is supported by sufficient evidence.

The trial court also found alternatively that appellant's parents consented to the search of both phones. As we conclude the court's alternative consent findings are supported in the record, we need not decide but will presume that appellant has standing to challenge the admission of evidence obtained from both cell phones. *See, e.g.*, *Yeager v. State*, 104 S.W.3d 103, 107 (Tex. Crim. App. 2003) (assuming standing for Fourth Amendment purposes); *Kennedy v. State*, No. 03-04-00101-CR, 2005 WL 1034114, at *4 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op., not designated for publication) (same); *Marsh v. State*, Nos. 11-01-00114-CR, 11-01-00115-CR, 2002 WL 32344343, at *5 (Tex. App.—Eastland June 27, 2002, no pet.) (mem. op., not designated for publication) (same); *Harmon v. State*, No. 05-92-01883-CR, 1993 WL 84790, at *2 (Tex. App.—Dallas Mar. 25, 1993, no pet.) (mem. op., not designated for publication) (same).

"Like an adult, a juvenile is protected from an unreasonable search by the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution." *In re A.D.D.*, 974 S.W.2d 299, 306 (Tex. App.—San Antonio 1998, no pet.). But "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Thus, the ultimate "touchstone" of any Fourth Amendment analysis is reasonableness. *Id.*; *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). To determine reasonableness in this context, courts conduct a balancing test, "which is rooted in traditional standards of reasonableness [and] requires . . . weigh[ing] the promotion of legitimate governmental interests against the degree to which [the search] intrudes upon an individual's privacy." *State v. Villarreal*, 475 S.W.3d 784, 808 (Tex. Crim. App.

2014) (internal quotations omitted). We apply an objective standard that views the officer's conduct in light of the facts and circumstances known to the officer at the time of the search. *See Meekins*, 340 S.W.3d at 459.

A party seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to prove the challenged search occurred without a warrant. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Once that initial burden is met, the State has the burden to prove the warrantless search was reasonable. *Id.* It is undisputed SHPD initially searched the LG and ZTE phones before obtaining a warrant. Thus, the State had the burden to prove the search was reasonable. *See id.* The State argues the search was reasonable because appellant's parents consented to the search.

Voluntary consent is generally an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A police officer may obtain voluntary consent from either the suspect or a third party who has actual or apparent authority to consent to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The typical third party consent case is when the police solicit the consent of *A* in order to search an area in which *B* has a privacy interest for the express purpose of finding evidence against *B*." *In re S.C.*, 523 S.W.3d 279, 285 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation omitted).

A party's legal property interest does not determine authority to consent. *Welch v. State*, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002). Authority to consent is instead derived from the mutual use of the property. *Id.* Therefore, the relevant inquiry is not which party has a superior interest in the property, but whether the party giving consent has joint access to and control of the property for most purposes. *Id.* In determining authority to consent, we consider whether the

consenting party had common use of the property. *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002).

Further, even if actual authority does not exist, consent may be validly obtained from a person who had apparent authority over the property. *See Rodriguez*, 497 U.S. at 184-86; *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). To determine whether a person had apparent authority, we must ask: "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Limon*, 340 S.W.3d at 756 (internal quotation omitted). This is an objective standard. *Id.* "[R]easonableness hinges on widely shared social expectations and commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest." *Id.* at 756-57 (internal quotations omitted).

## C.    Application

The parties' briefing and the trial court's findings of fact and conclusion of law primarily focus on whether appellants' parents could consent to SHPD's search and seizure of the two cell phones. Accordingly, we construe appellant's constitutional complaint as arising from the search performed after Detective Turner obtained the signed consent forms from appellant's parents but before SHPD obtained any applicable warrants.

The trial court concluded that appellant's parents had actual authority to consent to the search and seizure of the two cell phones, because the parents paid the service bills, the phones were registered under the parents' names, the parents told the police that they owned the phones, and there was no evidence that the phones were appellant's exclusive property that appellant's parents or other household members (i.e., appellant's younger brother) could not access.

13

The trial court relied on the Court of Criminal Appeals' decision in *Hubert v. State*, 312 S.W.3d 554 (Tex. Crim. App. 2010). There, the defendant's grandfather consented to police officers' search of the defendant's bedroom in the grandfather's house. *Id.* at 557. In analyzing whether the grandfather had authority to consent to the search, the Court of Criminal Appeals discussed the general principle that when a defendant lives with a parent or other close relative, and the relative consents to a search of the defendant's bedroom, courts will presume that the relative has sufficient common authority over the bedroom to authorize the consent to search. *Id.* at 563. The court noted, however, that a defendant may overcome this presumption by presenting evidence that the defendant had exclusive possession of the searched premises. *Id.* at 563-64. Because there was no evidence in *Hubert* that the defendant excluded his grandfather from the bedroom, the general presumption under the so-called "common authority" test applied. *Id.* at 564. The court reasoned:

> [T]he appellant, lacking any proprietary interest in the house, or even any possessory right other than by the grace of his grandfather, assumed the risk that his grandfather might permit the search of any area of the house that he might reasonably suspect the appellant was using for criminal purposes, even including the appellant's bedroom—at least in the absence of any agreement between the two that would expressly prohibit the grandfather from making such an intrusion, or some other obvious indicium of exclusion, such as a lock on the door to demonstrate that the grandfather was, *de facto*, excluded from the room.

*Id.* Based on these facts, the court upheld the trial court's determination that the grandfather had actual authority to consent to the search of the defendant's bedroom. *Id.*

We agree with the trial court that *Hubert* is instructive. Viewing the evidence in the light most favorable to the trial court's ruling here, appellant had

14

no proprietary interest in the cell phones, since they were owned and paid for by appellant's parents, who allowed appellant to use the phones for his personal use. Appellant's parents had joint access to and control of the property for most purposes. *See Welch*, 93 S.W.3d at 53. These facts demonstrate sufficient common authority over the phones to authorize the consent to search. The record does not show that appellant had exclusive possession of the phones. Appellant gave the LG phone to Katia, and then used the ZTE phone to communicate with Katia. So both cell phones were loaned to or used by someone other than appellant. Moreover, there is no evidence that appellant had utilized a passcode on the phones to exclude his parents or anyone else from accessing the phones. Officer Jaradi testified that the LG phone had a passcode on the phone, but Officer Turner testified that appellant's father knew the code. Officer Jaradi did not know whether the ZTE phone had a passcode, saying, "The ZTE was already unlocked [when he looked at it.] I'm not sure if there was a passcode." We hold that appellant's parents had actual authority to consent to the search of both phones. *Hubert*, 312 S.W.3d at 563-64; *see also Kohler v. State*, No. 01-05-00625-CR, 2012 WL 1749852, at *2 (Tex. App.—Houston [1st Dist.] May 17, 2012, no pet.) (mem. op., not designated for publication) (mother had actual authority to consent to officer's search of son's bedroom and computer, when mother was not barred from access to the computer or its contents by a hardware lock, password, or encryption).

The trial court found alternatively that appellant's parents had apparent authority to consent to the search, that is, the police reasonably believed that appellant's parents had authority to consent even if they did not. Because we hold that the parents had actual authority to consent to the search, it is unnecessary for

us to determine whether the officer's conduct was justified by the parents' apparent authority. *See Hubert*, 312 S.W.3d at 564.

For these reasons, we hold that the trial court did not err in denying appellant's motion to suppress, and we overrule his second issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).