672-15

No. 05-13-00839-CR

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

ORIGINAL

TOREY LAQUON BOYKIN
Petitioner

V.

THE STATE OF TEXAS

PETITON DISCRETIONARY REVIEW

ON appeal from Cause Number 366-82130-2012
IN the 366TH District Court
OF Collin County, Texas
Honorable Raymond G. Wireless, Judge Presiding.

FILED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 12 2015

Abel Acosta, Clerk

# Table of Contents

|  | PAGE |
|---|---|
| IDentitles Of Parties And counsel | (1) |
| Index Of Authorities | (2) |
| Statement Regarding oral Argument | (3) |
| Statement of the Case | (4) |
| Statement of Procedural History | (5) |

Grounds for Review:

#1: The Complainant was unable to identify the defendant in Court.

#2: Why was the defendant Charged with these items when the defendant was not Subjected to finger Prints, nor under any Resident Policy, and neither was in Possesion of the items.

#3: Hearsay is a Statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

| Argument | (9) |
|---|---|
| Prayer for Relief | (10) |
| Appendix | |

# Identities of Parties And Counsel

1. The Honorable Raymond G. Wheless, Judge Presiding of the 366th District Court of Collin County, Presided over the Jury trial.

2. The State of Texas, represented by Assistant Criminal District Attorneys:
Paul V. Anfosso (SBOT #00796129)
Lindsey B. Wynne (SBOT #24062203)
2100 Bloomdale Rd.
McKinney, TX 75071

3. Defendant, Torey Laquon Boykin, Represented by:
Carlton Hughes (Trial)
SBOT# 07341500
118 Lynn Avenue
Suite 304
Lewisville, Texas 75057

John Tatum (Appellate Counsel)
SBOT no. 19672500
990 S. Sherman St.
Richardson, Texas 75081

Torey Boykin (Petitioner)
So.# 01862265
Clemens Unit
11034 Highway 36
Brazoria, TX 77422

(1)

Index of Authorities

Butler v. State 769 S.W. 2d 234, 239 (Tex. Crim. App. 1989). Cited on page 10.

Coe v. State, 683 S.W. 2d, 431, 438 (Tex. Crim. App. 1984). Cited on page 10, Ground #1 [st] for Petition.

Crawford v. Washington, 541 U.C. 36, 59, 18... ...Cited o... ...#[st] For Review.

Reeves v. State, 806 S.W. 2d 540, 543 (Tex. ... ... 1990). Cert ... ... Cal. 92 L.Ed. 2d 736 (199...). Cited on ... 10.#

Woodall v. State, 236 ... ... (... ... 2001). Cited on Ground #[st] list ...

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument in the said court of the Honorable Judge's. Should and Should be found in favor of the Petitioner. For the helpful means of understanding the facts and proof of all said grounds, Arguments, and questions. Giving the courts a chance to hear both side's before Judging the outcome of the Petition.

(3)

# STATEMENT OF THE CASE

On the 4th day of June, 2013 Torey Laquon Boykin entered a not gulity Plea to the offense of agravated Robbery before Honorable Raymond Gautheless, Judge Presiding and a Jury. (RR: Vol. 4, p. 11) The Jury found the defendant Guilty of the offense of aggravated robbery as charged in the indictment. (RR: Vol. 5 P. 26) The Jury assessed punishment at 40 years confinement in the institutional division of the Texas Department of criminal Justice (RR: Vol.5 p. 76).

# STATEMENT OF PROCEDURAL HISTORY

1. Opinion of the Court of appeal was handed down of MAY 12, 2015.

2. Motion for Rehearing was Never filed.

3. Motion for Rehearing was Never filed.

# Grounds For Review, #2

Ground #2. THE Complainant was unable to Identify the defendant in court... (Vol. 4 P. 35)

Why wasn't the trial court moved by a motion of dismissal found in favored by Judge of defendant. When the defendant thereof was not positivly Identified as the offender who comitted the offense? While the trier of fact is the sole Judge of the weight and credibility of the witnesses, Coe v. State, 683 S.w. 2d 431, 438 (Tex. Crm. App. 1984).

## Grands For Review #2

The witness (Det. Trevor Ta___) was not aware of Any Fingerprints found on the Gun. (RR! Vol. 4 / p.129) Also did not Recall if any Fingerprints were found on the other items. (RR! vol. 4 p.131)

Why was the defendant Charged with these items. When the defendant was not subject to ___ for under ___. An neither was in Possesion of the items? (___ Violation of the TEX. Crime code! Nine tenths of the law of Possesion).

Criteria for Review #3

Ground #3.
Hearsay is a Statement, other than one made by the
declarant while testifying at the trial or hearing,
offered in evidence _____ the truth of the matter
asserted.(RRi 4th vol. P 8-11) (Tex. _____ .D

Why wasn't the defendant Given an opportunity to confront the
out-of-Court declarant who has given a Statement.
Offered in evidence to have the truth of the matter
And only Given an right to confront a witness. Who bore
the Statement made by that out-of-court declarant?
Crawford v. Washington, 541 U.S 36, 59, 68 (2004); woodall v.
State, 336 S.w.3d 634, 641 (Tex. crim. App. 2011).

## Argument

The Court must determine whether any Rational trier of fact could have found each element of the crime beyond a Reasonable doubt. Butler v. State 769 S.W. 2d 234, 239 (Tex. Crim. App. 1989). The State must Prove more than Just a Plausible explanation of the crime. Reeves v. State, 806 S.W. 2d 540, 543 (Tex. Crim. App. 1990), cert. denied, – U.S. – 111 S. Ct. 641, 113 L. Ed. 2d 736 (1991). While the trier of fact is the sole Judge of the weight and credibility of the witnesses, Coe v. State, 683 S.W. 2d 431, 438 (Tex. Crim. App. 1984) In this case all witnesses at one Point or the other have Recanted. Due to this case at trial the defendent _____, his Constitutional right of his 14th Amendment to be tried in his case. Knowing the defendent was not a _____ ///.

# Prayer For Relief

With the grounds that are _____ submitted to the court or criminal Appeals. Should and Shall review the issues of error (none proven facts.) that are in his case and examin _____ or by _____ given to him in favor of the petitioner. To withdraw, or overturn the judgement. Seen as incorrect and/or unjustly. Due to the faliure to show the burden of Proof in said trial. Also the recanted statement made by _____ _____ _____ _____ trial date.

Thank you

AFFIRM; and Opinion Filed May 12, 2015.



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-13-00839-CR

TOREY LAQUON BOYKIN, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court
Collin County, Texas
Trial Court Cause No. 366-82130-2012

# MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

A jury convicted Torey LaQuon Boykin of aggravated robbery and assessed punishment of forty years' imprisonment. In three issues, Boykin asserts the evidence is insufficient to prove he committed the offense, and the trial court erred by admitting into evidence a juvenile judgment of delinquency and statements made by a police officer during an interview of Boykin that the officer represented had been made by Boykin's accomplice to the robbery. We affirm the trial court's judgment.

## Background

At approximately 7:20 a.m. on June 19, 2012, Richard Valentine, who was a junior in high school, was walking to the bus stop to go to summer school. Valentine was wearing his "Dr. Dre Beats" headphones. Valentine described the headphones as "real expensive."

Valentine noticed two "guys" riding bicycles. One of the men was black and the other

one was white. The black man was wearing a white t-shirt and blue jeans and was riding a black bicycle. Valentine noticed the black man giving him a "weird stare, like he was noticing my stuff." The two men got off their bicycles, and the black man began walking toward Valentine. The man pointed a black gun at Valentine and demanded Valentine's property. Valentine was scared, nervous, and felt threatened. He did not want to get shot and did not want to die. Valentine gave the man the headphones, his cell phone, and a backpack containing his house key, a Lakers' cap, some socks, and a pair of flip-flops. The man told Valentine to walk away. Valentine ran to the bus stop.

When the bus arrived, Valentine told the bus driver about the robbery. Josh Haley, a student who was already on the bus, overheard the conversation and indicated he had a similar experience that morning. The police were contacted after the bus arrived at school. Two days later, Valentine was shown a photographic line-up. Valentine picked a photograph of Boykin and indicated he was seventy percent certain Boykin was the robber. Valentine was unable to identify Boykin at trial.

Haley testified that on June 19, 2012, at approximately 7:00 or 7:05 a.m., he was walking to the bus stop to go to summer school when he was approached by a black man and a white man on bicycles. The two men said they were lost and asked if they could borrow Haley's phone. Haley refused, said he needed to use the phone, and called his father. The men left, and Haley got on the bus. At the next stop, Valentine got on the bus and said he had been robbed. Valentine and Haley decided they had been approached by the same men because the men were on bicycles and one of the bicycles had bright orange rims. According to Haley, a person on a bicycle could get from the place he encountered the two men to the place where Valentine was robbed in approximately fifteen minutes. Haley was shown a photographic line-up, but was unable to identify the black man who approached him.

–2–

Detectives Trevor Taylor and Brad Thomason of the Frisco Police Department interviewed both Valentine and Haley. Further, Taylor and Thomason spoke to a "guy at the pool," who told them that, at approximately 7:15 a.m. on June 19, 2012, he saw a black man and a white man on bicycles at a location that would have made it impossible for those two men to have robbed Valentine at 7:20 a.m.[1] Taylor and Thomason obtained historical call data for Valentine's phone and learned the cell phone had been used approximately twelve hours after the robbery. Using the number contacted by the cell phone, they traced the cell phone to Sang Shi "Connor" Lee. Lee testified he saw an advertisement on Craig's List for the cell phone. In the evening of June 19, 2012, he met a black man and a white man at a park in Frisco and purchased the cell phone. Lee was shown a photographic line-up and, although he was unable to positively identify the black man from the park, he indicated Boykin's picture was the "closest."

Taylor and Thomason searched Craig's List and found an advertisement for some Dr. Dre Beats headphones that contained the same telephone number as in the advertisement for the cell phone purchased by Lee. An undercover officer for the Frisco police department contacted the telephone number on the advertisement and arranged to purchase the headphones on June 21, 2012. Three men, including Boykin and Ryan Rosenberg, met the undercover officer and were arrested. The serial number on the headphones recovered from the three men matched the serial number on the box for the headphones belonging to Valentine. Boykin had a silver .380 caliber pistol and was charged with unlawfully carrying a weapon.

Taylor and Thomason interviewed Boykin following his arrest. Boykin told the officers he had been staying in a shed behind Rosenberg's house. Boykin said he and Rosenberg were riding bicycles on June 19, 2012, when they saw a "kid" with a cell phone. They asked to borrow the cell phone, but the "kid" refused. Boykin denied being involved in the robbery of

---

[1] This evidence was brought out on cross-examination of Taylor and there was no evidence Boykin was one of these two men.

Valentine. Taylor testified that, when asked whether he used the .380 caliber handgun to rob Valentine, Boykin responded he did not use that gun. This caused Taylor to believe there was another gun that was used in the robbery.

Boykin denied any knowledge of Valentine's cell phone. Boykin said he found the headphones on a bench in a park and later found the .380 caliber pistol on a trail in a park. He picked up the .380 caliber handgun so that a child would not find the gun and get hurt. Taylor told Boykin that Rosenberg had said he found the headphones "somewhere else." Boykin responded, "he did" and said Rosenberg "came up with those" while the two men were riding bicycles. Later in the interview, Boykin again claimed he found the headphones in a park, but the headphones were on the grass and not on a bench. Boykin said he "threw in" the bench to make it seem as if somebody had left the headphones. Boykin finally stated that "we" found the headphones. Both Taylor and Thomason admitted it was not impossible that Boykin found the headphones and the .380 caliber handgun in a park.

Taylor obtained a search warrant for Rosenberg's house. In a shed behind Rosenberg's house, the police found a backpack, a Lakers' cap, Valentine's house key, and a black .9 millimeter handgun.

## Sufficiency of the Evidence

In his first issue, Boykin asserts the evidence is insufficient to establish he committed the aggravated robbery because Valentine's and Haley's descriptions of the robber were inconsistent; neither Valentine nor Haley accurately described him to the police or were able to identify him in court; Valentine was only seventy percent certain of his identification of Boykin in the photographic line-up; there were no recordings of the robbery and no fingerprints taken from the gun or the cell phone; and a witness saw him and Rosenberg at a time and place that would have made it impossible for him to have committed the robbery.

–4–

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As the fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence.").

We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id.* § 31.03(a) (West Supp. 2014). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). A person commits aggravated robbery if he uses or exhibits a deadly weapon during the commission of a robbery. *Id.* § 29.03(a)(2) (West 2011). A firearm is a deadly weapon. *Id.* § 1.07(a)(17)(A) (West Supp. 2014). Boykin challenges only whether the evidence is sufficient to prove he committed the underlying theft.

The jury may draw an inference of guilt when a defendant is found in unexplained possession of recently stolen property. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *Uyamadu v. State*, 359 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Rollerson v. State* 227 S.W.3d 718, 724–25 (Tex. Crim. App. 2007). However, before such an inference of guilt may be drawn, the State must establish the defendant's possession was personal, recent, unexplained, and involved a distinct and conscious assertion of right to the property. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984).[2] Generally, if a defendant offers an explanation for his possession of stolen property, the record must demonstrate the explanation is false or unreasonable before the evidence to support a conviction will be deemed sufficient. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977); *Reyes v. State*, 422 S.W.3d 18, 24 (Tex. App.—Waco 2013, pet. ref'd). The falsity of the explanation may be shown by circumstantial evidence. *Adams*, 552 S.W.2d at 815. Whether a defendant's explanation for possession of recently stolen property is true or reasonable is an

---

[2] *See also Pedraza v. State*, No. 05-11-00396-CR, 2012 WL 2308256, at *5 (Tex. App.—Dallas June 19, 2012, no pet.) (mem. op., not designated for publication).

issue to be determined by the fact finder. *Id.*; *Marmon v. State*, 704 S.W.2d 90, 92 (Tex. App.—Dallas 1985, pet. ref'd).[3]

When Boykin, along with Rosenberg and another man, were arrested, they were in possession of Valentine's headphones. Further, Lee indicated Boykin's picture was the "closest" to the black man who participated in selling him Valentine's phone. Finally, Valentine's backpack, house key, and Laker's cap were found in the shed where Boykin was staying. Boykin offered no explanation as to why Valentine's backpack, house key, and Lakers' cap were in the shed where he was staying and denied any knowledge of Valentine's cell phone. Boykin's explanation for his possession of the headphones was inconsistent. He first claimed to have found the headphones on a bench in a park. He then claimed Rosenberg found the headphones while the men were riding bicycles. He then said he found the headphones in the grass in a park. Finally, he asserted that he and Rosenberg found the headphones together. Boykin's inconsistent explanations for his possession of the headphones, coupled with his failure to explain his possession of Valentine's other property, permitted an inference that he committed the robbery. *See Hardesty*, 656 S.W.2d at 76; *see also Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Reyes*, 422 S.W.3d at 25 (rational jury could reasonably reject defendant's explanation for possession of stolen property as incredible).

Further, all the evidence, viewed in the light most favorable to the verdict, supports the jury's finding Boykin was the robber. Boykin was staying in a shed behind Rosenberg's house, which was in the same area as the robbery. Boykin admitted he and Rosenberg were riding bicycles on June 19, 2012, and approached a "kid" with a cell phone who would not let them borrow the phone. Haley testified that, on June 19, 2012 at 7:00 a.m. or 7:05 a.m., he was approached by a black man and a white man riding bicycles who asked to use his cell phone.

---

[3] *See also Pedraza*, 2012 WL 2308256, at *5.

According to Haley, this encounter occurred at a location approximately fifteen minutes, by bicycle, from the location of robbery. Valentine testified that, at approximately 7:20 a.m. on June 19, 2012, he saw a black man and a white man riding bicycles. The black man approached him, pointed a black gun at him, and demanded his property. Valentine was scared and afraid he was going to be shot. Valentine gave the man his cell phone, his headphones, and a backpack containing his house key, a Lakers' cap, some socks, and some flip-flops. Valentine identified Boykin as the robber from a photographic line-up, but indicated he was only seventy percent certain of the identification.

On the date of the robbery, Lee purchased Valentine's cell phone from a white man and a black man. Although Lee indicated he could not make a positive identification of the black man from the photographic line-up, he stated Boykin's picture was the "closest." The police located a Craig's List advertisement for a pair of headphones containing the same contact number as in the Craig's List advertisement for Valentine's cell phone. Two days after the robbery, an undercover officer made arrangements to purchase the advertised headphones. Boykin, Rosenberg, and another individual were arrested with the headphones, and the serial number on the headphones established they belonged to Valentine. The police found Valentine's house key, backpack, and Lakers' cap and a black .9 millimeter gun in the shed behind Rosenberg's house where Boykin was staying.

The State was not required to present direct evidence, such as recordings or fingerprints or definite eyewitness testimony, that Boykin was the robber. Rather, circumstantial evidence alone can be sufficient to support a conviction. *Hooper*, 214 S.W.3d at 13. Viewing the evidence in the light most favorable to the verdict, we conclude a rational juror reasonably could find, based on all the evidence and the inferences that can be drawn from the evidence, that

Boykin committed the aggravated robbery. *See Jackson*, 442 U.S. at 319; *Wise*, 364 S.W.3d at 903. Accordingly, we resolve Boykin's first issue against him.

### Evidentiary Issues

In his second and third issues, Boykin complains the trial court erred by admitting into evidence a juvenile judgment of delinquency and statements made by Taylor, while interviewing Boykin, representing Rosenberg had said he, rather than Boykin, found the headphones.

### *Standard of Review*

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.*; *see also Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

### *Judgment of Juvenile Delinquency*

In his second issue, Boykin asserts the trial court erred by admitting a judgment of juvenile delinquency because it does not reflect he was properly warned in the juvenile proceeding that the record of the proceeding could be used in a subsequent criminal case and, therefore, the judgment is "fundamentally defective."

While he was a juvenile, Boykin was adjudicated delinquent because he committed a robbery. At the beginning of the punishment phase of the trial in this case, Boykin's counsel objected to the admission of the judgment of juvenile delinquency on the ground "that it happened prior to him becoming an adult, and I don't think it's proper to put before the jury at this time." The trial court overruled the objection. The State presented its punishment phase case without offering the judgment of juvenile delinquency.

Boykin testified in his case-in-chief and requested the jury recommend that he be placed on probation. Boykin testified he had not previously been convicted of a felony, but that "something happened" when he was a juvenile that did not "count as a legal conviction." On cross-examination, Boykin admitted he had been charged with robbery when he was a juvenile. The State then offered the judgment of juvenile delinquency pertaining to the robbery. Boykin's counsel objected that it was "under the Family Code, and it's dealing with an adjudication of a juvenile robbery. And I don't think it's appropriate for the jury to consider it." The trial court admitted the judgment of juvenile delinquency into evidence. Boykin then testified about the circumstances surrounding the robbery.

To preserve a complaint for appellate review, the record must show a specific and timely complaint was made in the trial court and the trial court ruled on the complaint. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see also* TEX. R. APP. P. 33.1(a). The complaining party must have informed the trial court what was wanted, and why the party was entitled to it. *Clark*, 365 S.W.3d at 339. The specificity requirement is met if the complaint made at trial was clear enough so as to permit the trial judge to take corrective action when the complaint was made. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). A complaint is not preserved if the legal basis of the complaint on appeal varies from the complaint at trial. *Lovill*, 319 S.W.3d at 691–92. Boykin's complaint on appeal, that the record does not reflect he was properly admonished in the juvenile proceedings, does not comport with his objection in the trial court and, therefore, was not preserved for appellate

–10–

review. *See* TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 340 (appellant failed to preserve complaint for review when trial objection did not comport with issue raised on appeal).

Boykin does not dispute that he failed to raise his complaint on appeal in the trial court, but asserts a juvenile court's failure to give the required admonishments before accepting a guilty plea is a fundamental error that may be raised for the first time on appeal. At the beginning of any adjudication of delinquency hearing, the juvenile must receive a number of admonishments, including being admonished on the "law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding." TEX. FAM. CODE ANN. § 54.03(b)(2) (West 2014). In order to preserve error for appeal, the juvenile must object to the trial court's failure to give the required admonishments before testimony begins or, if the adjudication is uncontested, before the juvenile pleads to the petition or agrees to the stipulation of evidence. *Id.* § 54.03(i). Further, the juvenile court's failure to properly admonish the juvenile as to the potential use of the record from a juvenile proceeding in a future criminal case is subject to a harm analysis. *In re D.I.B.*, 988 S.W.2d 753, 758–59 (Tex. 1999).

Boykin offers no authority that he can attack the judgment of juvenile delinquency for the first time in this appeal from a later criminal conviction. However, we need not reach this issue because we do not have a reporter's record from the adjudication hearing in the juvenile court, and the judgment of delinquency does not reflect either Boykin's plea or what admonishments, if any, were given by the juvenile court judge prior to the adjudication hearing.[4] Therefore, we cannot determine whether Boykin preserved error in the juvenile court based on any failure by the juvenile court to admonish him that the record from the proceeding could potentially be used

---

[4] The judgment of delinquency states Boykin waived his right to a jury trial. The juvenile court "after hearing the pleadings of all the parties and after hearing the evidence and argument of counsel," adjudicated Boykin delinquent. It then notified Boykin of his right to appeal the determination. At a subsequent hearing, the juvenile court placed Boykin on probation of a period of eighteen months and ordered he be placed outside of the home.

–11–

in a future criminal case or whether he was harmed by any such error. Boykin had the burden of bringing forward a record on appeal sufficient to show the trial court erred in its ruling. *See Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007). Because he failed to do so, we cannot conclude the trial court erred by admitting the judgment of delinquency. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2014) (evidence may be offered by either party of an adjudication of delinquency based on violation by defendant of a penal law of the grade of felony); TEX. PENAL CODE ANN. § 29.02(b) (robbery is second degree felony).

We resolve Boykin's second issue against him.

### Statements Attributed to Accomplice

In his third issue, Boykin asserts the trial court erred by admitting portions of his interview during which Taylor told Boykin that Rosenberg claimed he found the headphones. At trial, Boykin objected that Rosenberg's purported statements were hearsay and violated his right to confront the witnesses against him. The trial court overruled the objections, but instructed the jury the statements were not offered for the truth of the matter asserted, but to show the effect of the statements on the listener.

Hearsay is a statement, other than one made by the declarant while testifying at trial, that a party offers to prove the truth of the matter asserted. TEX. R. EVID. 801(d), 60 TEX. B.J. 1129 (1998, amended 2015). Hearsay statements are inadmissible, except as provided by statute or other rule. TEX. R. EVID. 802 (1998, amended 2015). A statement that is not offered to prove the truth of the matter asserted, but rather is offered for some other reason, does not constitute hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim App. 1995). Specifically, "[a]n extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Dinkins*, 894 S.W.2d at 347; *see also Bell v. State*,

–12–

877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref'd) (statement is not hearsay if relevancy does not hinge truthfulness of statement); *Parker v. State*, 192 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

There is no dispute that Rosenberg did not make the statements attributed to him by Taylor. However, the relevance of Rosenberg's purported statements did not turn on their accuracy. Rather, the purported statements were relevant to show what was said to bring about certain responses from Boykin. *See Guidry*, 9 S.W.3d at 152; *Dinkins*, 894 S.W.2d at 347. As such, the truthfulness or accuracy of the statements Taylor attributed to Rosenberg had no bearing on their relevance. *See Bell*, 877 S.W.2d at 24. Because the purported statements were not offered to prove the truth of the matter asserted, they do not constitute inadmissible hearsay. *See Guidry*, 9 S.W.3d at 152; *Dinkins*, 894 S.W.2d at 347; *Parker*, 192 S.W.3d at 807.

We next turn to Boykin's complaint that his right to confront the witnesses against him was violated by the admission of Rosenberg's purported statements. The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend VI.[5] An accused's right to confront the witnesses against him is violated by the admission of an out-of-court statement made by a nontestifying declarant if the statement was testimonial and the accused did not have a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004); *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

However, a statement is not objectionable under the Confrontation Clause to the extent it is offered for some evidentiary purpose other than the truth of the matter asserted. *Crawford*,

---

[5] The Confrontation Clause was made applicable to the States through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 406 (1965).

−13−

591 U.S. at 59 n.9; *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). "When the relevance of an out-of-court statement derives solely from the fact that it was made, and not from the content of the assertion it contains, there is no constitutional imperative that the accused be permitted to confront the declarant." *Langham*, 305 S.W.3d at 576. In this situation, the witness against the accused is not the out-of-court declarant, but the witness who testifies the statement was made. *Id.* at 576–77 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985) ("The *nonhearsay* aspect of [the out-of-court declarant's] confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination . . . was satisfied by [the interrogating officer's] presence on the stand.")).

We have already determined the statements made by Taylor while interrogating Boykin were not made to establish the truth of the matters allegedly asserted by Rosenberg. Rather, they were admitted as part of Boykin's recorded interview and served to establish Boykin's reactions to the statements. Thus, the relevance of the out-of-court statements derives solely from the fact Taylor made them during the interrogation and not from their content. *See Langham*, 305 S.W.3d at 576.[6] Taylor, not Rosenberg, was the person "bearing witness" against Boykin and was available for confrontation and cross-examination at trial. Thus, Boykin's rights under the Confrontation Clause were not violated by the admission of the statements. *Id* at 576–77.[7] We resolve Boykin's third issue against him.

---

[6] *See also Ferralez v. State*, No. 13-12-00651-CR, 2013 WL 7208820, at *2 (Tex. App.—Corpus Christi Feb. 13, 2013, no pet.) (mem. op., not designated for publication) (relevance of third-party statements used by detectives during interview of defendant derived solely from defendant's responses to them and not from their content); *Humphrey v. State*, No. 01-08-00820-CR, 2012 WL 4739925, at *2, 4 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op., not designated for publication) (concluding admission of video containing interview with defendant, which included officers challenging defendant's version of events with third-party statements, did not violate defendant's right to confrontation because statements were not offered to prove truth of matter asserted).

[7] *See also Ferralez*, 2013 WL 7208820, at *2; *Humphrey*, 2012 WL 4739925, at *4.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130839F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

TOREY LAQUON BOYKIN, Appellant

No. 05-13-00839-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 366-82130-2012.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of May, 2015.

ey Boykin
-0186-2365
ens Unit
1 Hwy 36
ria, Texas 77422

Court of Criminal
P.O. Box 12308 Capitol
Austin, Texas 78711

FOREVER 2014
FOREVER 2014