988 S.W.2d 753 (1999)
In the Matter of D.I.B., Respondent.
No. 98-0308.
Supreme Court of Texas.
Argued September 8, 1998.
Decided April 1, 1999.
*754 Joe Frank Garza, Thomas S. Truner, Alice, for relator.
Robert A. Berg, Corpus Christi, for Respondent.
Justice OWEN delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL and Justice GONZALES joined.
The State presents several issues in this juvenile proceeding. The first is whether a reviewing court must conduct a harm analysis when a trial court fails to follow section 54.03(b)(2) of the Family Code, which requires the trial court to explain to the child and his or her parent, guardian, or ad litem that the record in a juvenile adjudication may be used in the punishment phase of a subsequent, adult criminal proceeding. We hold that the court of appeals should have conducted a harm analysis but that the trial court's failure to give the required explanation was harmless error in this case. The next issue confronting us is whether a juvenile court may grant probation in a nonjury proceeding if there is an adjudication of delinquency based on the offense of murder. We agree with the court of appeals that a juvenile court has the authority under the Family Code to grant probation under those circumstances. Finally, we must determine whether the court of appeals erred in reversing and remanding this case for a new trial because the trial court incorrectly advised the juvenile that only a jury had the power to grant probation. We conclude that reversal was required. Accordingly, we affirm the judgment of the court of appeals.

I
D.I.B., a juvenile, was alleged to have engaged in delinquent conduct by committing murder. D.I.B. pleaded "not true" to the charge. The record reflects that neither the trial court (sitting as a juvenile court), the prosecutor, nor defense counsel had previously been involved in a juvenile proceeding when murder was the alleged offense, and there was considerable confusion about certain aspects of the applicable law.
*755 One of the areas of confusion was whether a juvenile court has the authority to grant probation if a juvenile elects to have punishment assessed by the court rather than a jury. The trial court advised D.I.B. that only a jury, not the court, could grant probation. The court was also unclear about how a record from a juvenile adjudication might be used in a subsequent criminal proceeding. Although section 54.03(b)(2) of the Family Code requires a juvenile court to explain at the beginning of an adjudication hearing that the record of that proceeding may be used in the punishment phase of a future, adult criminal proceeding,[1] the court not did give that explanation.
D.I.B. exercised her right to a jury trial, and the jury found that she had engaged in delinquent conduct and assessed a determinate sentence of twenty years. The trial court rendered judgment based on the jury's findings and assessment. Counsel for D.I.B. filed a motion for new trial, which was denied, and D.I.B. was remanded to the custody of the Texas Youth Commission.
On appeal, D.I.B. contended that the trial court's noncompliance with section 54.03(b)(2) required reversal and that it was unnecessary for the court of appeals to conduct a harm analysis. D.I.B. also contended that the trial court misstated the law regarding probation and that this error required reversal. The court of appeals agreed with D.I.B. that, having undertaken to explain probation to the juvenile, the trial court was required to correctly state the law and that it had not done so.[2] The court of appeals reversed without considering whether the trial court's misstatement of the law was harmful error. The court of appeals also held that the failure to properly admonish D.I.B. in accordance with section 54.03(b) required reversal. The court expressly declined to conduct a harm analysis with respect to that issue because the court concluded that "nothing can occur subsequent to an erroneous admonishment that can cure such an error."[3] The State filed a petition for review in this Court, which we granted. We consolidated this case for argument with In re C.O.S.,[4] which we also decide today. We first consider the trial court's failure to comply with Family Code section 54.03(b)(2).

II
The Family Code requires a trial court to give certain explanations to a juvenile who is accused of criminal conduct that could result in an adjudication of delinquency.[5] A trial court must explain, among other things, that the record of an adjudication in a juvenile proceeding may be used in the punishment phase of a future criminal proceeding.[6] The trial court in this case apparently misapprehended what the Family Code requires, and that misapprehension was apparently shared by the prosecutor:
THE COURT: [W]ith respect to a juvenile record, is there a juvenile record?
MR. TURNER [the prosecutor]: No, Your Honor.
THE COURT: So there is no issue there that needs to be discussed?
MR. TURNER: No, Your Honor.
Thus, no explanation at all was given to D.I.B. regarding the possible future use of the record from this juvenile proceeding. The State concedes and we agree that the trial court clearly erred in failing to give the statutorily required explanation. The only *756 issues regarding that omitted explanation are whether a harm analysis should have been conducted by the court of appeals and if so, whether harmful error was demonstrated.
Juvenile proceedings are quasi-criminal in nature.[7] The trial of a juvenile case is governed by the Rules of Criminal Evidence and by Chapter 38 of the Code of Criminal Procedure.[8] However, on appeal our civil rules of appellate procedure govern as far as practicable.[9] Our civil appellate rules generally require that a trial court's judgment cannot be reversed unless there is error and that error probably caused the rendition of an improper judgment.[10] The State relies on the civil rules embodying the harmful error standard rather than its criminal counterpart, and D.I.B. does not challenge the application of the civil rules under the United States or Texas Constitutions.[11] Thus, we are not called upon to decide whether the criminal rule should govern a harm analysis in a juvenile case such as this one.
The courts of appeals have diverged on whether the mandatory nature of Family Code section 54.03 forecloses a harm analysis that would otherwise be required by our rules of appellate procedure. These divergent views are evident from a comparison of the court of appeals' decision in In re C.O.S.,[12] which held that a harm analysis is necessary, with the decision in this case. One other decision that has held that a harm analysis should be conducted if a trial court fails to explain the possible future use of the record of a juvenile delinquency adjudication is In re F.M.[13] And a few courts have held that a harmful error analysis is necessary if the trial court gave a partial but incorrect explanation of any of the matters specified by section 54.03.[14]
But the decisions in C.O.S. and F.M. are in the decided minority. Most courts of appeals have broadly stated that the failure to give an explanation required by section 54.03 is reversible error and that no harm need be shown.[15] However, in virtually all of those *757 cases, the trial court either gave none of the explanations required by section 54.03(b) or failed to explain the nature of the allegations against the juvenile or the possible consequences of an adjudication.[16]
In a context analogous to this case, the Court of Criminal Appeals has now held that a harmful error analysis should be performed even when a statute is mandatory.[17] In adult criminal proceedings in which the accused desires to enter a plea of guilty, the trial court is required by statute to give certain admonishments.[18] The Court of Criminal Appeals has concluded that the failure to give one or more of these required admonishments is not automatically reversible error. In Cain v. State, that court held that harm must be shown unless "certain federal constitutional errors labeled by the United States Supreme Court as `structural'" are implicated.[19]
The recent decisions of the Court of Criminal Appeals in High,[20]Cain,[21] and Matchett v. State[22] were somewhat of a departure from its prior precedent. That court had previously held that the failure to give one of the admonitions required by article 26.13 of the Code of Criminal Procedure was reversible error regardless of whether the defendant was harmed.[23] General statements by *758 the Court of Criminal Appeals in Whitten v. State and other earlier decisions led some courts of appeals to conclude by analogy that a harm analysis did not apply when a trial court failed to give a juvenile an explanation that is required by section 54.03(b) of the Family Code.[24] The broad propositions that appeared in decisions such as Whitten and Morales have since been explained and refined in Cain.[25]
In Whitten, the Court of Criminal Appeals had stated that no showing of harm was necessary if the trial court failed to substantially comply with the statute that required certain admonishments when a defendant enters a guilty plea.[26] However, the court also explained in Whitten that "substantial compliance" included situations in which the admonishment was not given at all but was immaterial to the guilty plea.[27] The court gave as an example a situation in which a trial court failed to explain the nonbinding character of prosecutorial recommendations when no prosecutorial recommendation had been made.[28] In Cain, the Court of Criminal Appeals candidly recognized the flaw in the Whitten analysis of harmless error and "substantial compliance." The court said, "[t]o claim that an admonishment was in substantial compliance even though it was never given is a legal fiction."[29] The court then observed that the "substantial compliance" provision of article 26.13 of the Code of Criminal Procedure has "been used as a rough replacement for a harmless error analysis, when that is really not its purpose."[30] The court in Cain found compelling the plurality's reasoning in Matchett, recognizing that substantial compliance was not the same as a harmless error analysis and that a complete failure to give an admonition could not be substantial compliance.[31] The court then held in Cain that "all errors, including a failure to admonish ... are subject to the harmless error standard found in Texas Rule of Appellate Procedure 81(b)(2)," unless "`structural'" federal constitutional errors are present.[32] The Court of Criminal Appeals expressly disapproved of Morales to the extent that it implied that a harmless error analysis was not required.[33]
The decisions in Cain and Matchett thoughtfully explain why a harm analysis should be applied even in cases in which the trial court fails to give statutorily mandated explanations or admonishments.[34] If the error could not have affected the outcome of the proceeding and does not transgress certain constitutional guarantees, such as total deprivation of the right to counsel or trial by a judge who was not impartial,[35] then that error should not require reversal. Importantly, however, the Court of Criminal Appeals has also observed that in many cases, the threshold for demonstrating harm is minimal:

*759 Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless beyond a reasonable doubt under [former] Rule 81(b)(2) [now TEX.R.APP. P. 44.2]. Hence, it may be true that some kinds of errors (particularly jurisdictional ones) will never be harmless under the Rule [44.2] test and that some other kinds of errors will rarely be harmless. But, appellate courts should not automatically foreclose the application of the harmless error test to certain categories of error. Where an error is shown to be harmless, it is not a ground for reversal, regardless of the category or label attached to that particular error.[36]
The foregoing rationale applies with equal force to a harm analysis under Rule 44.1, which is the civil counterpart to Rule 44.2 of our appellate rules of procedure.[37] In some instances, the harm flowing from a trial court's error in a civil or quasi-criminal case may be apparent from the nature of the error and the particular facts. However, in this case the trial court's failure to explain to D.I.B. the potential use of the record is not one of those instances.
The trial court's error is not one that "defies analysis."[38] Nor is the "data ... insufficient" to conduct a meaningful analysis of harm in this case.[39] D.I.B. pleaded "not true" to the allegations against her; she presented a defense; and she was found to be a delinquent. There is no indication that, had D.I.B. known of the potential uses of the record of an adjudication in juvenile court, she would have been able to avoid an adjudication of delinquency. Nor is there any evidence that she was offered and would have accepted an agreement to plead to an offense other than murder as the basis for her adjudication. Absent a showing that the trial court's failure to give the required explanation may have affected the adjudication or the basis for it, the error was harmless.
We note that our holding today regarding the explanations required by section 54.03(b) of the Family Code is limited. The only issue before us is whether an appellate court should conduct a harm analysis when a trial court fails to explain the potential use of the record from a juvenile proceeding in a future criminal case. We are not called upon to decide, and do not decide, whether the failure to give one or more of the other explanations required by section 54.03(b) of the Family Code might be a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by `harmless-error' standards."[40]

III
We next consider whether a juvenile court has the power to grant probation to a child after a nonjury trial when the basis for the adjudication of delinquency is murder. We agree with the court of appeals that the juvenile court does have the power to grant probation.
The Family Code provides that "the court or jury may, in addition to any order required or authorized under Section 54.041 or 54.042 of this code, place the child on probation on such reasonable and lawful terms as the court may determine."[41] The Family Code does not limit a juvenile court's authority to grant probation. There appears to be some uncertainty, however, about whether section 3g of article 42.12 of the Texas Code of Criminal Procedure applies in a juvenile proceeding and therefore implicitly overrides section 54.04(d) of the Family Code. Article 42.12 of the Code of Criminal Procedure applies to adult criminal proceedings and prohibits a trial court from suspending a sentence and placing a defendant on *760 community supervision when a defendant is found guilty of certain offenses, including murder.[42] But nothing in either the Code of Criminal Procedure or the Family Code reflects any legislative intent to import into juvenile proceedings section 3g's limitations on a trial court's ability to grant community supervision in adult, criminal proceedings. The trial court erred when it advised D.I.B. that it did not have jurisdiction to grant probation.
At several junctures during the adjudication proceeding, D.I.B. questioned whether the trial court's statement of the law regarding probation was accurate. While D.I.B.'s objections were not as specific as they might have been, the objections were adequate to call the issue to the trial court's attention and to give the trial court an opportunity to cure the error.[43] The error was thus preserved for appeal.

IV
The court of appeals did not discuss whether the trial court's misstatement of its power to grant probation was harmful error. A harm analysis should have been undertaken, but a review of the record reflects that harm was adequately demonstrated.
Counsel for D.I.B. informed the juvenile court that he would recommend to his client disposition by the court rather than by a jury if the court had the authority to grant probation. Thus, it is likely that D.I.B. would have chosen to have her adjudication, disposition, or both heard by the trial court instead of a jury had she known that the trial court possessed the ability to grant probation. The jury did not grant probation. It imposed a determinate sentence of twenty years. We conclude that under these circumstances, D.I.B. demonstrated that the court's incorrect statement of the law was harmful.[44]
For the reasons considered above, we affirm the judgment of the court of appeals, which remands this case to the juvenile court for a new trial.
Justice BAKER filed a concurring opinion.
Justice BAKER, concurring.
I disagree with the analysis in this opinion but I concur in the judgment.
NOTES
[1] See TEX. FAM.CODE § 54.03(b)(2). The adjudication of D.I.B. was governed by section 54.03 as it existed prior to its amendment in 1997. Because those amendments are not relevant to the issues presented by this appeal, we cite the current version of section 54.03.
[2] 963 S.W.2d 862, 864.
[3] Id. at 865-66.
[4] 988 S.W.2d 760 (Tex.1999).
[5] See TEX. FAM.CODE § 54.03(b).
[6] The Family Code provides:

(b) At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem:
* * *
(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding.
TEX. FAM.CODE § 54.03(b)(2).
[7] See In re M.A.F., 966 S.W.2d 448, 450 (Tex. 1998); C.E.J. v. State, 788 S.W.2d 849, 852 (Tex. App.Dallas 1990, writ denied).
[8] See TEX. FAM.CODE § 51.17.
[9] See Brenan v. Court of Appeals, 444 S.W.2d 290, 292 (Tex.1968); see also TEX. FAM.CODE § 56.01.
[10] Although former Texas Rule of Appellate Procedure 81(b)(1) was in effect at the time this case was tried, there was no substantive change when new rule 44.1 was promulgated. See TEX.R.APP. P. 44 note. We therefore cite to the current rule, which provides:

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:
(1) probably caused the rendition of an improper judgment; or
(2) probably prevented the appellant from properly presenting the case to the court of appeals.
TEX.R.APP. P. 44.1(a).
[11] Family Code section 56.01 directs that the requirements governing a juvenile's appeal are those in civil rules generally. The standard for reversible error in a criminal case is different from that in a civil case. If the error in a criminal case is a constitutional one, reversal is required "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). If the error is not constitutional, "[a]ny ... error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). The United States Supreme Court has held that a juvenile is entitled to proof beyond a reasonable doubt during the adjudicatory stage when charged with an act that would constitute a crime if committed by an adult. See In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We do not resolve but only note the potential tension in applying our civil standard of review.
[12] 961 S.W.2d 360 (Tex.App.Houston [1 st Dist.] 1997), aff'd, 988 S.W.2d 760 (Tex.1999).
[13] 792 S.W.2d 564, 565 (Tex.App.Amarillo 1990, no writ).
[14] See In re A.L.S., 915 S.W.2d 114, 117 (Tex. App.San Antonio 1996, no writ) (stating that it would apply a harmless error analysis when the trial court uses imprecise language while giving the explanations required by section 54.03(b)); In re O.L., 834 S.W.2d 415, 420 (Tex.App. Corpus Christi 1992, no writ) (holding that harmful error analysis does apply to defects in an explanation required by section 54.03(b)).
[15] See In re M.R.R., 929 S.W.2d 687, 689 (Tex. App.San Antonio 1996, no writ) (holding that former TEX.R.APP. P. 81(b)(1) (now TEX.R.APP. P. 44.1) did not apply when a trial court gave none of the required explanations); In re A.L.S., 915 S.W.2d at 116 (holding that omission of explanation of allegations was "fundamental" error and no harmful error analysis was necessary); In re R.W., 884 S.W.2d 502, 502 (Tex.App.Corpus Christi 1994, writ denied) (holding that when none of the required explanations were given, that was "fundamental" error requiring reversal); In re T.F., 877 S.W.2d 81, 82 (Tex.App. Houston [1 st Dist.] 1994, no writ) (holding that harm analysis should not be conducted when none of the explanations required by section 54.03(b) are given); In re L.T., 848 S.W.2d 769, 772 (Tex.App.Corpus Christi 1993, no writ) (holding that "fundamental" error occurred and reversal was required when trial court failed to explain allegations or to explain adequately future use of adjudication record); I.G. v. State, 727 S.W.2d 96, 99 (Tex.App.San Antonio 1987, no writ) (holding that failure to explain allegations and possible consequences was fundamental error that required reversal even though the juvenile had not raised this in his brief); W.J.M.A. v. State, 602 S.W.2d 397, 399-400 (Tex. Civ.App.Beaumont 1980, no writ) (holding that failure to give explanation of allegations required reversal); D.J.M. v. State, 598 S.W.2d 726, 727 (Tex.Civ.App.Waco 1980, no writ) (holding that explanations of allegations and possible consequences of the proceeding were mandatory and that failure to give these explanations was reversible error); In re D.L.E., 531 S.W.2d 196, 197 (Tex.Civ.App.Eastland 1975, no writ) (holding that failure to explain allegations and possible consequences mandated reversal).
[16] See cases cited supra note 15.
[17] See High v. State, 964 S.W.2d 637, 638 (Tex. Crim.App.1998); Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).
[18] The Code of Criminal Procedure provides in pertinent part:

(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:
(1) the range of the punishment attached to the offense;
(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court....;
(3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, the trial court must give its permission to the defendant before he may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial; and
(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.
* * *
(c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.
TEX.CODE CRIM. PROC. art. 26.13.
[19] Cain, 947 S.W.2d at 264 (citing Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), which held that admission into evidence of an involuntary confession is subject to a harm analysis); see also High, 964 S.W.2d at 638; Matchett v. State, 941 S.W.2d 922 (Tex.Crim.App.1996) (plurality opinion).
[20] 964 S.W.2d 637.
[21] 947 S.W.2d 262.
[22] 941 S.W.2d 922.
[23] See Morales v. State, 872 S.W.2d 753, 754-55 (Tex.Crim.App.1994) (plurality opinion) (requiring reversal when the trial court wholly failed to advise the defendant that if he was not a citizen of the United States, a plea of guilty could result in deportation), overruled by Cain v. State, 947 S.W.2d 262 (Tex.Crim.App.1997); Ex parte Cervantes, 762 S.W.2d 577, 578 (Tex.Crim.App.1988) (same), overruled by Ex parte Tovar, 901 S.W.2d 484 (Tex.Crim.App.1995); Ex parte McAtee, 599 S.W.2d 335, 336 (Tex.Crim.App.1980) (requiring reversal when the trial court failed to inform the defendant of the range of punishment), overruled by Ex parte Tovar, 901 S.W.2d 484 (Tex.Crim.App.1995); Whitten v. State, 587 S.W.2d 156, 158-59 (Tex.Crim.App.1979) (same), overruled by Cain v. State, 947 S.W.2d 262 (Tex. Crim.App.1997).
[24] See, e.g., I.G. v. State, 727 S.W.2d 96, 99 (Tex.App.San Antonio 1987, no writ).
[25] See Cain, 947 S.W.2d at 263-64.
[26] See 587 S.W.2d at 158; see also TEX.CODE CRIM. PROC. art. 26.13.
[27] See 587 S.W.2d at 158.
[28] Id.
[29] Cain, 947 S.W.2d at 264.
[30] Id.
[31] Id.
[32] Id. (citing Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
[33] Id.
[34] See id. at 264; Matchett v. State, 941 S.W.2d 922, 928-30 (Tex.Crim.App.1996) (plurality opinion) (Overstreet, J.).
[35] See Fulminante, 499 U.S. at 309, 111 S.Ct. 1246 (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)).
[36] Cain, 947 S.W.2d at 264 (finding a similar discussion in Matchett well-reasoned).
[37] See TEX.R.APP. P. 44.
[38] Cain, 947 S.W.2d at 264.
[39] Id.
[40] Fulminante, 499 U.S. at 309, 111 S.Ct. 1246; see also Cain, 947 S.W.2d at 264 n. 5.
[41] TEX. FAM.CODE § 54.04(d). Certain amendments to section 54.04(d) became effective September 1, 1997, after this case was tried, but they are not material to the issues before us. Accordingly, we cite the current statute.
[42] See TEX.CODE CRIM. PROC. art. 42.12, § 3g(a)(1).
[43] See TEX.R.APP. P. 33.1(a)(1).
[44] See Eatmon v. State, 768 S.W.2d 310, 311 (Tex.Crim.App.1989) (indicating that a defendant could show harm from the trial court's erroneous admonishment of the range of punishment when the court accepted a "guilty" plea if the sentence imposed was longer than the maximum indicated by the trial court); Robinson v. State, 739 S.W.2d 795, 801 (Tex.Crim.App.1987) (same).