**CONCUR, DISSENT, and Opinion Filed April 25, 2022**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

___

**No. 05-20-00695-CV**

___

## IN THE INTEREST OF J.N., L.N., K.N., AND M.N., CHILDREN

**On Appeal from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-19715**

## CONCURRING AND DISSENTING OPINION

Opinion by Justice Carlyle

At least in part, Family Code § 153.009 exists because the legislature has determined that children over age 12 have a voice worthy of consideration in custody matters, and it has directed the trial courts to allow them to use that voice. Although I agree with my colleagues' discussion and conclusion regarding the application's sufficiency here, I would hold that violating the section's interview requirement is not subject to a harm analysis on appeal, and I would make our ruling non-retroactive. I respectfully dissent from the panel's decision to perform a harm analysis,[1] and would reverse.

---

[1] I do not disagree with the majority that ample evidence supports the trial court's ultimate custody determination, and the trial court may very well have acted rationally in declining to interview the child on the basis that the interview would not likely affect the trial court's decision as to Mother.

As an initial matter, we have no direct guidance from the supreme court on this issue. The majority fills that void by citing to a juvenile criminal case as support for using a harm analysis here. *See* slip op. at 12 (discussing *In re D.I.B.*, 988 S.W.2d 753, 757–59 (Tex. 1999)). In *D.I.B.*, the supreme court held that a trial court's failure to follow a statute—requiring a juvenile court to explain that the record of adjudication in that proceeding may be used in the punishment phase of a future criminal proceeding—was subject to a harm analysis. *In re D.I.B.*, 988 S.W.2d at 757–59 (citing TEX. FAM. CODE § 54.03(b)(2)). The court began its analysis by moving its focus towards criminal law, noting that "[j]uvenile proceedings are quasi-criminal in nature." *Id.* at 756.

With an appropriate criminal-law focus, the court then relied on numerous court of criminal appeals precedents concluding that the failure to give certain admonishments in adult guilty plea proceedings was subject to harm analysis. And this makes a lot of sense. The question in *D.I.B.* was whether the failure to give a required admonishment was something a harm analysis could meaningfully address. In that case, D.I.B. had pled "not true" to murder, exercised the right to a jury trial, presented a defense, and was found guilty by a jury. That record gave the supreme court "no indication" that had the court admonished D.I.B. of the future potential uses of the record of adjudication, "she would have been able to avoid an adjudication of delinquency," that she "was offered and would have accepted" a plea agreement, or that without the admonishment, she was not fully apprised of the

consequences of refusing the plea offer. *Id.* at 759. This follows from the common notion that the failure to give every statutorily required guilty plea admonishment in criminal cases can be saved by a harm analysis. *Id.* at 757.

But contrary to the family code section at issue here, the criminal code itself includes a harmless error provision, stating that a trial court's "substantial compliance" is sufficient "unless the defendant affirmatively shows that he was not aware of the consequences of his plea or that he was misled or harmed by the admonishment of the court." TEX. CODE CRIM. PROC. art. 26.13(c).

In contrast, § 153.009(c) says the child's statement does not diminish the trial court's exercise of discretion in making its ultimate conclusion. We are bound to consider words and phrases in context and within the statute as a whole so that no provision is rendered meaningless or mere surplusage. *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). To approve using a harm analysis on appeal when a trial court fails to comply with the child interview portion of § 153.009(a) renders subsection (c) meaningless. If the court hasn't interviewed the child, there's no need for a subsection stating that the child's statements do not reduce its discretion. In effect, the legislature has instructed both us and the trial court that an interview must take place even if a child's statement would not influence the trial court's decision. Thus, in this circumstance, by concluding the appellate rules require a harm analysis, we render the subsection (c) guarantee meaningless surplusage.

Moreover, the legislature knows how to save a potentially void order for a trial court's failure to follow a mandatory statute in the family-law context. Family Code § 263.302, governing permanency hearings, says the "child shall attend each permanency hearing unless the court specifically excuses the child's attendance" and that court "shall consult with the child in a developmentally appropriate manner regarding the child's permanency plan." But that statute concludes, "Failure by the child to attend a hearing does not affect the validity of an order rendered at the hearing." We have no such saving language here.

Further, the guarantee at issue here is to a child in a proceeding to decide that child's primary home. When the law promises things to children, we should honor those promises. I can't help but imagine a 13-year-old child whose world is already upending due to her parents' divorce. She hears from the lawyer: if you want to speak to the judge, the judge has to listen to you. And no, you don't have to do it in open court, the legislature has created this mandatory procedure for you to connect directly with the judge. In some children, this must create a certain sense of optimism and relief, and in any child (even those who choose not to speak), it fosters the idea that the system respects the child's voice at this difficult time. Notably, the seminal case on ascertaining a child's best interests, *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976), lists "the desires of the child" first among the nine non-exclusive factors. In my view, this statute plays a unique role in our system of laws, and

declining to perform the harm analysis helps, however little, to foster children's trusting the courts from their likely earliest interactions.

I come to this conclusion with open eyes that these child testimony statutes have been subject to intense debate around the country and that thought leaders in the field question whether these statutes are good for children. *See* Debra Lehrmann, The Child's Voice, *An Analysis of the Methodology Used to Involve Children in Custody Litigation*, 65 TEX. B.J. 882 (Nov. 2002). Texas Supreme Court Justice (and then-trial judge) Lehrmann recognized this debate and noted in this excellent 2002 article that trial judges who decline a child's stated preference should make time to discuss the decision with the child after the court makes its orders to provide proper closure and to give appropriate perspective to the child. *Id.* at 889. But the legislature made the determination that children have a voice in court in this situation, and we in the appellate courts are duty bound to continue the child-centric focus of this area of the law.

Of note, § 153.009 is not limited to the typical divorce context: perhaps the trial court is faced with awarding nonparents conservatorship, *see* FAM. CODE §§ 153.371–.377, or when both parents are deceased and grandparents, aunts, or uncles are in the conservatorship mix, *see id.* §§ 153.431–.434. We would not want a different § 153.009 appellate review rule for these situations, when performing a harm analysis could be exceptionally complicated without the substance of the child's wishes.

And so, when the focus of the proceeding is the best interests of the child, *see* FAM. CODE § 153.002, and when a statute requires the judge to allow the child to present her statement on a pivotal issue in the case, refusing to allow the child to do so implicates the core of the proceeding and the core of reliance interests the legislature created for the children of this state. Given that, I believe a harm analysis is inappropriate.

Finally, if this Court is to undertake a proper harm analysis, it must be able to consider what the child said or would have said.[2] *See* TEX. R. APP. P. 44.1(a)(2) (prohibiting reversal for legal error unless court of appeals "concludes that the error . . . probably prevented the appellant from properly presenting the case to the court of appeals"). Because the record does not indicate what the child would have said, we cannot perform a proper harm analysis. As noted, *Holley* factor number one is "the desires of the child." 544 S.W.2d at 372. There is a greater-than-zero number

---

[2] Perhaps, in this vein, if the party petitioning for the over 12-year-old to testify had made a bill of exception or offer of proof, where the child outlined the testimony she would have given the judge, we could be in a different spot. This is the approach several sister courts have suggested could resolve the matter. *See In re C.S.*, No. 04-20-00421-CV, 2021 WL 5496159, at *1–4 (Tex. App.—San Antonio Nov. 24, 2021, no pet.) (mem. op.); *In re T.A.L.*, Nos. 07-17-00274, 00275-CV, 2018 WL 3862994, at *3 (Tex. App.—Amarillo Aug. 14, 2018, pet. denied) (mem. op.); *In re A.S.*, No. 11-14-00154-CV, 2015 WL 582013, at *4 (Tex. App.—Eastland Feb. 5, 2015, no pet.) (mem. op.); *In re N.W.*, No. 02-12-00057-CV, 2013 WL 5302716, at *10 (Tex. App.—Fort Worth Sept. 19, 2013, no pet.) (mem. op.).

But this method works counter to the purpose of having a child interview take place outside the parties' view and in chambers. The very nature of having a child speak directly to the judge is so the child speaks to the judge. Having a lawyer recount what the child has told the lawyer for an offer of proof lacks the potential depth a judge's interview with the child may have. *See* Lehrmann, 65 Tex. B.J. at 889. It also calls into question the accuracy of the offer, as it is entirely possible—if not probable—that what a child tells his or her parent's lawyer may not be the same as what the child might tell the judge in private. Nevertheless, if we required this error preservation, in my eyes a practice counter to § 153.009, and if the depth of the child's statement appeared in the record, we could more properly perform a harm analysis.

of statements the child could have made in the interview to cause the trial court to think differently about the evidence before it. Yet, an appellant cannot point to those statements in the record. And thus, at the very least, the trial court's refusal to hear from the child has "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a)(2).

For this reason too, I am not swayed by the criminal harmless error precedent: appellate rule 44.2 allows for harmless error affirmance on different standards than rule 44.1 does, and we read the two rules separately. The existence of separate reversible error rules for criminal and civil cases leads me to the conclusion that we have different guidelines in civil and criminal cases, however slight. And in giving meaning to the existence of separate rules, their application may diverge in some cases. I view this as one of those cases, and for this reason as well, decline to rely on *In re D.I.B.*

Finally, one appellate court concluded that a trial court's failure to interview a child was harmless because the trial court stated it did not feel that the interview would be helpful, and it appeared to the appellate court that the trial court declined to do so "to avoid the child's unnecessary involvement in the proceeding." *In re C.B.*, No. 13-11-00472-CV, 2012 WL 3139866, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 2, 2012, no pet.) (mem. op.). We do not have that indication here. Other courts have concluded an application was too late and thus the trial court could have concluded that the party applying for the interview had done so for the purpose

of delay. *See In re J.G.M.*, No. 09-11-00368-CV, 2012 WL 1951119, at *3 (Tex. App.—Beaumont May 31, 2012, no pet.) (mem. op.); *In re N.W.*, 2013 WL 5302716, at *10; *Hamilton v. Hamilton*, 592 SW.2d 87, 88 (Tex. App.—Fort Worth 1979, no writ). To those holdings, I note that the statute includes no timeliness provision, and I question whether an appellate court has authority to insert one.

*          *          *

We can avoid error-preservation, meaninglessness or surplusage, and, above all, clear statutory purpose problems by energizing the bright-line rule the legislature gave us. This is not an amorphous concept whose application could change from case to case, *see In re M.S.*, 115 S.W.3d 534, 538–39 (Tex. 2003) (admitting judge's prior findings that party had violated judge's orders was harmless), but instead is subject to simple, mechanical application. I respectfully dissent from the holding that we should perform a harm analysis for a trial court's failure to interview a child after proper application pursuant to Family Code § 153.009.

/Cory L. Carlyle/
CORY L. CARLYLE
200695f.p05                                                JUSTICE